THE STATE OF OHIO, APPELLEE, *v.* PRUITT, APPELLANT.

(No. 46601—Decided April 23, 1984.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Kathleen Aynes,* for appellant.

DAY, P.J. In this case, Kyle Pruitt (defendant) appeals his conviction under R.C. 2925.11 for possession of Preludin, a narcotic. For the reasons adduced below the judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

I

A

In response to a report of a prior robbery, two Cleveland policemen went to 1675 Ansel Road, a CMHA housing

project. The policemen were directed to apartment No. 1033, the residence of Alfred Bryant. He allowed them to enter. The apartment was only one room and the police were able to see into the open bathroom. They saw the defendant sitting on the closed toilet seat, and a woman kneeling in front of him. On the floor were a paper bag, pill bottles, and syringes. A metal cap with a powdery residue and matches were on the sink. The residue was later analyzed and determined to be Preludin.

### B

The defendant was represented at the preliminary hearing by the public defender. Later, for some unknown reason, new counsel was assigned. From the outset, there was a failure of communication and cooperation between counsel and the defendant. Twice before trial the defendant requested the public defender be reappointed. These requests were in writing and were among thirty-three nearly unintelligible documents and motions the defendant filed *pro se*. Counsel joined in the defendant's request, because, as he told the court, communication had broken down to the point that it was impossible for him to obtain information to fulfill his duties. What conversation counsel did get from the defendant he found incomprehensible, indicating the defendant did not understand the nature of his defense. The motion for new counsel was denied, but recognizing the suggestion that the defendant might not be competent to stand trial, the court referred the defendant to the court psychiatric clinic.

Two weeks after a hearing at which the defendant was found competent, the defendant renewed his motion for new counsel; this time for the appointment of any counsel, not the public defender in

particular. The court overruled the motion and presented the defendant with two alternatives: either accept his appointed counsel or represent himself. No explanation of the charges against the defendant, or risks upon conviction, or the relative merits and dangers of the choices was attempted. The defendant opted to try his own case.

His appointed counsel was assigned to sit at the trial table as a representative of the court, but the defendant chose not to accept his offers of assistance. In a trial to the court, the defendant was found guilty and sentenced. Six errors are assigned.

### II

Assignment of Error No. I

"The trial court erred in denying the defendant a speedy trial pursuant to R.C. 2945.71."

R.C. 2945.71 provides in part:

"(C) A person against whom a charge of felony is pending:

"* * *

"(2) Shall be brought to trial within two hundred seventy days after his arrest."

Under Section (E) of the statute, each day spent in jail is counted as three. There is no question that from the day of his arrest to the day of trial the defendant was jailed. Thus subject to any exception that may apply, the statute mandated a ninety-day period within which the defendant should have been tried. The record reveals the important dates and the tolling or non-tolling status of intervals between them:

August 18, 1982 Defendant arrested

October 15, 1982 Defendant filed affidavit of prejudice

November 3, 1982 Defendant withdraws affidavit of prejudice[1]

---

[1] The defendant withdrew his affidavit on October 29, 1982. The date of the letter from the Chief Justice of Ohio acknowledging the withdrawal information and mooting the question was November 3, 1982. The latter date is used although arguably the earlier day (more favorable to the defendant's claim) should have been adopted.

November 19, 1982 Motion to discharge[2]

November 29, 1982 Defendant referred for psychiatric examination

January 4, 1983 Second motion to discharge[3]

January 19, 1983 Motion to discharge denied

January 20, 1983 Defendant found competent to stand trial

Trial continued on court's motion

February 9, 1983 Trial on one hundred seventy-fifth day after arrest

R.C. 2945.72(B) and (E)[4] tolled the statute for the delays occasioned by the affidavit of prejudice (nineteen days), motions to discharge and psychiatric referral (sixty-two days), respectively. Thus, the one hundred seventy-five days were reduced by eighty-one to ninety-four days, or four days over the limit.[5]

The state seeks to offset this by tolling the statute for the twenty-day *sua sponte* continuance from January 20 to February 9 under the provenance of R.C. 2945.72(H). That section provides the speedy trial period may be extended by:

"The period of any continuance granted on the accused's own motion, and the period of any *reasonable contin-*

uance granted other than upon the accused's own motion;" (Emphasis added.)

The cases have repeatedly made it clear that the speedy trial statutes are to be strictly enforced. *State* v. *Pachay* (1980), 64 Ohio St. 2d 218, 221 [18 O.O.3d 427], and cases cited there. Otherwise, an overbroad construction of R.C. 2945.72(H) "would render meaningless, and thwart the direction of the speedy-trial statutes." *State* v. *Lee* (1976), 48 Ohio St. 2d 208, 209 [2 O.O.3d 392]. To ensure that only *reasonable* court-initiated continuances toll the statute:

"The record of the trial court must in some manner affirmatively demonstrate that a *sua sponte* continuance by the court was reasonable in light of its necessity or purpose. *Mere entries by the trial court will ordinarily not suffice, except when the reasonableness of the continuance cannot be seriously questioned.* Although this burden is contrary to the presumption of regularity generally accorded to trial proceedings, it appears necessary to carry out the purpose of the speedy-trial statutes." *Id.* (Emphasis added.)

The entry setting the trial date in this case stated only:

---

[2] A marginal note on the motion document indicates that the trial judge denied the motion on November 29, 1982. No date of journalization is indicated. However, if the date of action is not accepted for speedy trial computations, trial courts could nullify the objectives of speedy trial through accidental, indolent or deliberate delay in ruling on a defendant's motions under R.C. 2945.72(H).

[3] This motion does not affect tolling because it overlaps a tolling period in effect. Tolling is not doubled by overlapping actions by the defendant. A marginal note overruled this motion on January 13, 1983, thus bringing it within the period tolled for the psychiatric examination.

[4] R.C. 2945.72 provides in part:
"The time within which an accused must be brought to trial, or, in the case of felony, to

preliminary hearing and trial, may be extended only by the following:
"* * *

"(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;
"* * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;"

[5] The days have been computed by not counting the first day and always counting the last in figuring the total time interval and each relevant omission, Crim. R. 45(A). Any relevant allowances for Saturdays, Sundays, and legal holidays have been made. *Id.*

"Psychiatric hearing. Defendant found competent to stand trial. Continued for trial to February 9, 1983."

If the record in this case did not reflect some extraordinary features, the quoted entry would be faulted by the "mere entry" teaching in *Lee*. However, the record does reflect some extraordinary features with respect to defense motions. There were more than thirty motions filed and all of them may or may not have been determined by the trial court. The record does not reflect the dispositions clearly or at all on many of the motions. It is defendant's duty through counsel to establish the clarity of record necessary to exemplify the claimed errors. This was not done because the dispositions or lack of them were insufficiently established. Therefore, it is assumed that the processing of the multiplicity of motions not reaching a resolution on the record reasonably consumed as many or more than four days. With the record in this condition the four days can logically be charged off under either the defendant's action or the "reasonable continuance" provisions of R.C. 2945.72(H). Thus, the trial date was not out of rule and the entry setting it was not flawed. The record does not show the defendant pressed for rulings or did not get them within a reasonable time. Under these special circumstances it cannot be presumed that the presumption of the regularity of trial court actions has been overcome.

Assignment of Error No. I is without merit.

### III

Assignment of Error No. II

"The trial court violated appellant's Fourteenth Amendment due process rights when it entered a finding that he was competent to stand trial."

### A

The defendant makes two arguments under this assignment of error: first, that the court applied the standard for insanity rather than incompetency; and second, that the court failed to order the production of relevant evidence. The arguments are interrelated as posed. But the interrelation is not immediately apparent. For the first proposition clearly cannot be demonstrated. The court did not announce its standard and the references in the record to the defendant's lack of mental disease or defect do not require the conclusion that the court necessarily included such defects as elements of incompetency. The real question is whether, applying the proper standard, the evidence supports the ultimate finding. With the first argument recast in these terms, the second argument inevitably raises the question of who bears the burden of persuasion in a competency hearing. However, wherever the burden of proving incompetency lies, the court's failure to compel production of evidence tending to prove the defendant incompetent will be prejudicial to him.

### B

The evidence at the competency hearing consisted almost entirely of the testimony of Dr. Willie Williams, a psychologist with the court psychiatric clinic. A summary of Williams' testimony supporting the competency finding is: the defendant was drug dependent in remission, but suffered no mental disease or defect; and he understood the respective roles of the cast of characters at the trial, and the nature of the charges against him. This latter testimony was conclusory only. Williams never indicated, on either direct or cross- examination, what the defendant actually understood.

On the other hand, Williams testified that he had never seen anyone who filed as many *pro se* documents as did the defendant. He also said that there was "no question" that the defendant had difficulty assisting counsel and that he had a distrust of counsel. Williams in-

dicated that before his examination of the defendant he reviewed a history prepared by a psychiatric social worker. After completing the examination and report, he spoke with the defendant's V.A. counselor, Anthony Dunn. Although that conversation was brief, Williams admitted it raised matters which, if explored more deeply, might cause his opinion of the defendant's competency to change. In particular, Williams noted that he did not have the V.A. "assessment" of the defendant. His suggestion was, that had the V.A. records shown a history or pattern of distrust indicating paranoia, his opinion would be different. When the defense moved to order the production of the V.A. records, the motion was impliedly denied.

The trial court had before it the defendant's numerous *pro se* motions and apparently found many of these quite incomprehensible. Williams, however, considered them nothing more than typical legal "boilerplate" and a logical response to the defendant's belief in his own innocence. Although some were sensible, others clearly suggested the defendant understood himself to be charged with drug use, rather than possession. He requested urinalysis to show he had not taken any drugs, and went so far as to file an affidavit of prejudice against the presiding judge of the court of common pleas in the belief that the judge was responsible for denying the tests.

On this state of the record, the evidence both for and against competency was equivocal at best; neither was very convincing. It is impossible to say on which side the balance lay. Thus, only on the theory that the presumption of competence was not rebutted by a

preponderance of the evidence can the finding of the trial court be sustained.[6] This condition raises a serious question of first impression in Ohio—the constitutionality of R.C. 2945.37 on its face and the constitutionality of its application in this case. These questions are raised by defendant only obliquely or by implication. Nonetheless, they are reached in this case as plain error. Crim. R. 52(B) (if plain error reach is necessary).

### C

Competency hearings are governed by statute. The first two paragraphs of R.C. 2945.37 provide:

"(A)  In a criminal action in a court of common pleas or municipal court, the court, prosecutor, or defense *may raise the issue of the defendant's competence to stand trial.* If the issue is raised before trial, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after trial has begun, the court shall hold a hearing on the issue only for good cause shown.

"A defendant is presumed competent to stand trial, *unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense.*" (Emphasis added.)

At the outset, a serious problem of interpretation is evident: on whom does the burden of overcoming the "presumption" of competence by a preponderance of the evidence rest? Or, rather, who bears the burden of persuasion on the issue. The question is important, assuming the V.A. records would have made a difference, because it helps determine who was charged with bringing evidence of the defendant's incompetency before the court. The result reached (*i.e.,* competence) can be supported by a reasonable assessment of the evidence here only if the burden was

---

[6] Given the statutory presumption, does it not place the burden on the defendant to prove lack of competence?

placed on the defendant. There does not appear to be any Ohio decisional law on this placement.

At first blush the statute seems to indicate the defendant must prove himself incompetent (cf. fn. 3, *supra*). But this solution leads to immediate difficulties. For it may often be the case, especially where only minor offenses are involved, that an arguably incompetent defendant would rather go to trial and risk only minimal punishment, than risk prolonged institutionalization as an incompetent (see R.C. 2945.38[C]). Also, as noted by the court in *United States* v. *DiGilio* (C.A. 3, 1976), 538 F. 2d 972, 988, "it is * * * contradictory to argue that a defendant who may be incompetent should be presumed to possess sufficient intelligence that he will be able to adduce evidence of his incompetency which might otherwise be within his grasp." Cf. *Pate* v. *Robinson* (1966), 383 U.S. 375, 384, "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."

On the other hand, to put the burden of proving the defendant's incompetence on the state would almost always lead to a paradoxical situation in which the trial participant with the least interest in meeting the burden is charged with doing so. The issue may be clouded still further by the statutory provision that the question of the defendant's incompetency may be raised by the defendant, the state or the court. Must the court prove the defendant's incompetency by a preponderance of the evidence when neither the defendant nor the state want such a finding? No matter how apportioned, the requirement of proving the defendant's incompetency gives rise to incongruous results.

Putting this problem aside for the moment, the more fundamental question arises — given the statutory burden of proof (preponderance) what must actually be proved? Here the statute is unambiguous and for that very reason inconsistent with the Due Process Clause. For it requires that *incompetency* must be proved. Many courts agree that this is impermissible.[7]

The starting points are these:

"[C]onviction of an accused person while he is legally incompetent violates due process, *Bishop* v. *United States,* 350 U.S. 961, 76 S. Ct. 440, 100 L.Ed. 835 (1956), and that state procedures must be adequate to protect this right." *Pate* v. *Robinson, supra,* at 378.[8]

Since notions of fundamental fairness are concerned, the rules of proof must be tailored to guard both against unconstitutional convictions attendant upon erroneous determinations of *competency,* and unconstitutional allocations of proof relevant to that issue. See *Santosky* v. *Kramer* (1982), 455 U.S. 745, 755, "in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants"; and *Addington* v. *Texas* (1979), 441 U.S. 418, 423. Thus, the factfinder must be charged with finding *competency* not incompetency by a preponderance of the evidence. This is so because with the evidence in balance, the defendant may not go to trial. Once a bona-fide doubt of incompetency has been raised, due process requires that

---

[7] See *United States* v. *DiGilio, supra,* and the authorities collected in fn. 9, *infra.*

[8] "[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope* v. *Missouri* (1975), 420 U.S. 162, 171.

"[e]vidence showing competency must be more persuasive than that showing incompetency. Of necessity, then, there is no room for a rule of law placing any burden of proof on the defendant." *United States* v. *DiGilio, supra.*[9] Implicit is the notion that it is preferable that a competent defendant not reach trial than that an incompetent defendant be tried, unable to comprehend and participate in his own defense.

It follows that if due process requires that there is an issue of competency to be proved, the state must bear the burden. This will both insure vigorous presentation of the evidence and prevent the unfairness of calling upon the defendant, whose competency has been genuinely questioned, to disprove the doubt.[10] *DiGilio, supra*, at 988.

Accordingly, R.C. 2945.37(A) is unconstitutional, both on its face and as applied to the defendant. The court below misallocated the burden of proof and charged the defendant with proving his own incompetency. That bootstrap action denied the defendant due process of law.

It is my view that Assignment of Error No. II is well-taken. The majority does not agree, but this does not change the decision to reverse and remand.

## IV

Assignment of Error No. III

"The appellant was denied his right to the assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution."

The defendant makes two argu-

---

[9] See, also, *United States* v. *Hollis* (C.A. 3, 1977), 569 F. 2d 199, 203-205; *Brown* v. *Warden, Great Meadow Correctional Facility* (C.A. 2, 1982), 682 F. 2d 348, 349; *United States, ex rel. Bilyew,* v. *Franzen* (C.A. 7, 1982), 686 F. 2d 1238, 1244-1245; *People* v. *McCullum* (1977), 66 Ill. 2d 306, 313-314, 362 N.E. 2d 307, 310-311; *People* v. *Hubert* (1977), 51 Ill. App. 3d 394, 397-399, 366 N.E. 2d 909, 911-913; *State* v. *Heger* (N.D. 1982), 326 N.W. 2d 855, 857-858.

[10] Nothing that has been said here undermines the "presumption of competency." The rule adopted requires only that once the presumption has been met by evidence giving rise to a bona-fide doubt as to the defendant's competency, the burden of proving competency remains with the state. See *DiGilio* at 988, fn. 20; *Hollis* at 205, fn. 8; *Brown* at 349; *McCullum* at 313-314, 362 N.E. 2d at 310-311. The presumption serves only to allocate the burden of "going forward" with the evidence. Cf. Evid. R. 301. *Jones* v. *United States* (1983), ___ U.S. ___, 77 L.Ed. 2d 694, is inapposite to the present case. *Jones* held that an insanity acquittee could be confined for treatment beyond the period of incarceration that conviction would warrant. The allocation of the proof burden on the affirmative defense in the initial trial was on the defendant. The requisite quantum of proof was by a "preponderance." *Id.* at 700. Release of an insanity acquittee could be procured by proof of cure by a preponderance and again the burden was on the acquittee. In a tangential footnote reference, *id.* at 707, the majority noted that *Leland* v. *Oregon* (1952), 343 U.S. 790, had approved a state's imposition of the burden of proving the affirmative defense of insanity on the defendant and permitted a proof requirement beyond a reasonable doubt. Allocation of the burden to defendant has current approval by the Supreme Court, but it may be a minority view in the country. See *Patterson* v. *New York* (1977), 432 U.S. 197, 210-211. All of this affects nothing in the present case because the issue here is competency, not a defense based on insanity at the moment a crime is committed. That issue does come into the competency determination. For that determination implicates the ability of the defendant to presently assist his counsel and to presently understand the charges. It is *present* ability that makes competency crucial and differentiates it from the insanity defense. A perfect defense (insanity or otherwise) cannot be tried while a defendant is incompetent.

ments under this assignment of error: first, the court failed to appoint different counsel for the defendant upon his timely request; and second, the defendant's waiver of his right to counsel, accepted by the court, was not knowing, intelligent and voluntary.

### A

Although the Supreme Court has recently said that the Sixth Amendment does not guarantee a "meaningful relationship" (whatever that may be) between the accused and his counsel, *Morris* v. *Slappy* (1983), 461 U.S. 1, the concern here is with the absence of *any* attorney-client relationship.

"In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict. * * * If a court refuses to inquire into a seemingly substantial complaint about counsel when he has no reason to suspect the bona fides of the defendant, or if on discovering justifiable dissatisfaction a court refuses to replace the attorney, the defendant may then properly claim denial of his Sixth Amendment right. * * * In the absence of a conflict which presents such a Sixth Amendment problem, the trial court has discretion to decide whether to grant a continuance during the course of trial for the substitution of counsel, and that decision will be reversed only if the court has abused its discretion. * * *" (Citations omitted.) *United States* v. *Calabro* (C.A. 2, 1972), 467 F. 2d 973, 986.

From the record it appears there was no communication between the counsel and the accused and a total lack of cooperation and trust of counsel on the defendant's part. In the absence of any indication that the request for other counsel was for purposes of delay or not in good faith, and there is none here,

failure to honor the defendant's timely request amounted to a denial of effective assistance of counsel. Cf. *Brown* v. *Craven* (C.A. 9, 1970), 424 F. 2d 1166, 1170; and *United States* v. *Young* (C.A. 5, 1973), 482 F. 2d 993, 995.

### B

Once the defendant's competency to stand trial was called into question, it fell to the state to prove the defendant competent by a preponderance of the evidence. This the state failed to do. On the present state of the record the defendant may not have been competent. It is, therefore, impossible to determine whether he made a knowing, intelligent, and voluntary waiver of his right to counsel, *Westbrook* v. *Arizona* (1966), 384 U.S. 150, 150-151; cf. *Pate* v. *Robinson, supra,* at 384; and *Drope* v. *Missouri, supra,* at 182-183.

Assignment of Error No. III is well-taken.

### V

Assignment of Error No. IV

"The trial court erred in violation of due process as guaranteed by the Fourteenth Amendment to the United States Constitution when he allowed the defendant to represent himself without making a proper inquiry to determine that he was competent to do so and in allowing him to proceed when his actions indicated that he was not competent to conduct his own defense."

For the reasons given in Section IV(B) it is also impossible to determine whether defendant was competent to represent himself. In any event the trial judge did not take the precautions necessary before allowing self-representation even by competent defendants. See *Faretta* v. *California* (1975), 422 U.S. 806, 835.

Assignment of Error No. IV is well-taken.

## VI

Assignment of Error No. V

"The trial court erred in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution in denying appellant's motion for judgment of acquittal when there was no proof that the appellant knowingly possessed a controlled substance."

The defendant challenges the sufficiency of the evidence on the element of possession. He maintains correctly that mere proof of presence in the vicinity of illicit drugs is not enough to prove that element. *Cincinnati* v. *McCartney* (1971), 30 Ohio App. 2d 45, 48 [59 O.O.2d 34]; cf. *State* v. *Haynes* (1971), 25 Ohio St. 2d 264, 269-271 [54 O.O.2d 379]. But the evidence adduced at trial goes well beyond this. The drug was found within a foot of the defendant and by reasonable inference in a form ready for injection — syringes were found on the floor between the defendant and the woman. In addition, Bryant, the lessee of the apartment, testified the drug was not his. This evidence supports the conclusion the drug was in the defendant's constructive possession. It was within his dominion and control. *State* v. *Bradley* (1971), 26 Ohio App. 2d 229, 232 [55 O.O.2d 387].

Of course, the evidence is circumstantial. But it is wholly consistent with the state's theory of guilt and "irreconcilable with any reasonable theory of innocence." See *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 160 [66 O.O.2d 351]. That the defendant might have been in the bathroom for the purpose of engaging in oral sex with the woman only provides an additional explanation for the defendant's presence there. It does not conflict with the legitimate inferences which may be drawn from the condition and location of the drug and the other evidence found. If believed, there was sufficient evidence adduced to support conviction beyond a reasonable doubt.

Assignment of Error No. V is without merit.

## VII

Assignment of Error No. VI

"The trial court erred in failing to advise the appellant that he had a right to request conditional probation and in failing to hold a hearing on his eligibility therefore, pursuant to R.C. 2951.04(A) & (B)."

R.C. 2951.04(A) provides:

"If the court has *reason to believe* that an offender convicted of a felony or misdemeanor is a drug dependent person or is in danger of becoming a drug dependent person, the court may, and when the offender has been convicted, *the court shall advise the offender that he has the right to request conditional probation* for purposes of treatment and rehabilitation." (Emphasis added.)

It has been held that it is the mandatory duty of the trial court to advise the defendant of his right to request conditional probation under R.C. 2951.04 (A). *State* v. *Lampkin* (1982), 3 Ohio App. 3d 341, 343.

The record is replete with references which ought to have given rise to the reasonable belief that the defendant was or might become drug dependent (letter of Mr. Dunn to Judge Coleman; report of Dr. Williams). That some of this evidence was adduced during the defendant's competency hearing is immaterial. The statute places no limit on the way a reasonable belief may be engendered.

The state's suggestion that error, if any, was harmless is off the mark. The defendant was "potentially eligible for conditional probation." *State* v. *Gibson* (1980), 69 Ohio App. 2d 91, 98 [23 O.O.3d 130]. And there is no indication that the defendant's prior convictions for drug abuse and breaking and entering would have directed the trial court's exercise of discretion adversely to the defendant and barred him from condi-

tional probation. See R.C. 2951.04(B)(3). It is improper to speculate how the trial court might have exercised its discretion under R.C. 2951.02(B) and (D).

Assignment of Error No. VI is well-taken.

## VIII

The judgment of the trial court is reversed and the cause is remanded for further proceedings in accordance with this opinion.

*Judgment reversed and cause remanded.*

MARKUS and NAHRA, JJ., concur.

MARKUS, J., concurring. I agree that defendant was denied the effective assistance of counsel without a valid waiver of that right. I also agree that defendant failed to demonstrate a denial of his speedy trial rights, that the evidence supported the verdict, and that the court should have advised defendant about his right to seek conditional probation. Therefore, I agree with the majority's disposition of Assignments of Error Nos. I, III, IV, V, and VI. However, I disagree with Judge Day's disposition for Assignment of Error No. II.

In my view, R.C. 2945.37 constitutionally places the burden on the defense to prove the defendant's incompetence by a preponderance of the evidence. Cf. *Leland* v. *Oregon* (1952), 343 U.S. 790 (state may constitutionally require *defendant* to prove insanity defense beyond a reasonable doubt), cited with approval in *Jones* v. *United States* (1983), 77 L.Ed. 2d 694, 707, at fn. 17. In this case, the preponderance of the evidence supported a finding that defendant was competent, even if the state had the burden of proof. The only expert who testified said that defendant was competent to understand the charges and the trial situation and competent to cooperate with his counsel. While defense cross-examination raised issues about that psychologist's credibility, the court could certainly accept and believe those expert opinions.

If defendant had no burden to prove his incompetence, his counsel still had the burden to rebut the state's evidence with V.A. records or otherwise. The state had no burden to search for every conceivable item of evidence which might challenge its own evidence. The state did not possess the allegedly significant V.A. records, so it had no duty to supply them as potentially exculpatory material. Defense counsel should have subpoenaed their custodian, if he considered those records were significant.

NAHRA, J., concurring. I also concur except as to the disposition of Assignment of Error No. II. In my view, R.C. 2945.37 is constitutional.