Jason Dawson appeals from his convictions in the Greene County Common Pleas of one count of burglary and one count of felonious assault. Dawson raises two assignments of error, to wit, the trial court erred in overruling his motion to withdraw his guilty plea and erred in overruling his motion that his counsel be replaced.
Dawson was indicted on September 30, 1996. He entered his guilty pleas to both charges on July 30, 1997. On August 25, 1997, Dawson himself submitted a motion to withdraw his guilty pleas and a motion to replace his appointed counsel.
On September 4, 1997, the date set for sentencing, the trial court conducted a hearing on the defendant's motions. The defendant addressed the court and stated he wished to withdraw his guilty pleas because his counsel, Cynthia Thompson, misinformed him that burglary could be committed without force, stealth, or deception. (Tr. 3).
Dawson further stated that Ms. Thompson misinformed that he could be convicted of felonious assault "even though I was being strangled when the alleged attack occurred." Dawson stated his understanding was that strangulation could possibly be considered adequate provocation to reduce felonious assault to aggravated assault. (Tr. 4).
He further stated he was unhappy with Ms. Thompson because she failed to file a discovery request and failed to adequately communicate with him. He said his Canadian counsel, Peter Thompson, of Toronto negotiated the plea agreement with the prosecutor. (Tr. 6). Lastly, Dawson stated that he had discovered evidence aiding in his defense since his guilty plea. Specifically, he stated the "Hartpences made a statement conflicting with the written statements and similar to statements made by Ms. Brooks myself, and that will be made by Mr. Kilgore." (Tr. 7).
Cynthia Thompson addressed the court concerning the client's accusations.
 MS. THOMPSON: Thank you, Your Honor. In regards to some of the allegations that were made by Mr. Dawson, when I first spoke with Mr. Dawson, his expression and statement to me was that he wanted to make sure that he was not going to, quote-unquote, get shafted in a deal here in this Courtroom due to the fact that he had previously appeared before you. He wanted to make sure that the deal that was worked out with his previous Counsel, Mr. Thompson, would still be honored here. He had admitted to me then that he knew he was guilty of what was being charged and that he just wanted to make the best deal possible.
 I asked him at that time for all the information that would assist me in representing him. He stated at that time that he was not interested in going to trial. As we progressed along through the case, and, again, after the arraignment, I came over, received the discovery packet from Mr. Cusack, showed it to the Defendant. He said well, that's not all the discovery.
 He informed me to call his attorney in Canada. I called his attorney in Canada to receive the rest of the discovery. He then called his attorney and asked him not to send it to me. I then approached the Prosecutor's Office and asked to see the file, and on that rare occasion they did open the file to me and had laid out before me the rest of the information that was in the discovery packet which I have since obtained and went through.
 I did not share that information with Mr. Dawson because at that time he had told me verbally for the second time that I was fired from his case and that he no longer wanted my representation. So that information was not made available to him. (Tr. 8, 9).
 Mr. Dawson points out that under the O.R.C. that a person cannot break into another person's bedroom, and as I explained to him from my study of the case law which was the interpretation of the statutory law, that that could occur and that if a person is in that dwelling and they are asleep or not available; i.e., passed out drunk or whatever, not of the right frame of mind, if he goes into that dwelling, that is considered a separate part, and I explained to him that again was my interpretation of the law and that at all times we have the right and continue to have the right to take this to a jury trial and allow the jury to decide. (Tr.9).
Ms. Thompson stated she advised Dawson that while the defense of self-defense was an option, "Courts generally do not accept the stabbing of a person 13 or so times as self-defense." (Tr. 9). She denied telling Dawson that he would get eight years if he did not plead guilty. She said she told him he could still receive the maximum sentence even if he pleaded guilty. She denied failing to communicate with Dawson. She said she accepted numerous phone calls from him, visited him in the jail when she could, and communicated with his attorney in Canada. (Tr. 10).
The trial court overruled the defendant's motions and imposed two seven year concurrent sentences upon the defendant. The Court found the shortest prison term would demean the seriousness of the defendant's conduct and would not adequately protect the public from future crime by him. The court also found that the defendant posed the greatest likelihood of recidivism pursuant to R.C.2929.14(C).
Crim. R. 32.1 provides:
 A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.
The decision to grant or deny a presentence motion to withdraw a guilty plea is left to the sound discretion of the trial court, and will not be disturbed on appeal absent a showing of an abuse of discretion. State v. Xie (1992), 62 Ohio St.3d 521. Abuse of discretion means more than a mere error of law or judgment, but rather that the trial court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151. A motion made pursuant to Crim. R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court.State v. Smith (1977), 49 Ohio St.2d 261. Also, a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. However, a trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. State v. Xie, supra.
In State v. Fish (1995), 104 Ohio App.3d 236, the Hamilton County Court of Appeals provided some guidelines for evaluating whether the trial court has abused its discretion in denying the motion. The court listed the following non-exhaustive factors which an appellate court should consider, namely (1) lack of prejudice to prosecution if motion granted, (2) whether the accused was represented by highly competent counsel, (3) whether the accused was given a full Crim.R. 11 hearing before he entered his plea, (4) whether a full hearing was conducted on his motion and (5) whether full and fair consideration was given to the motion, (6) whether the motion to withdraw sets out specific reasons, (7) whether the accused understood the nature of the charges and possible penalties, and lastly, whether there was a complete defense to the charges. See, e.g., State v. Hollis
(1993), 91 Ohio App.3d 371.
There was no evidence presented to the trial court as to whether the prosecution would have been prejudiced by the trial court's granting of the motion. Although the defendant contended his counsel was incompetent, there is nothing in this record to suggest that. The defendant himself told the trial court at the time of his plea that he was completely satisfied with Ms. Thompson's representation of him. (Tr. 3 of plea). The docket and journal entries demonstrate that the State provided full discovery to the defendant's counsel on July 10, 1997. Additional discovery material was apparently sent to the defendant's other lawyer in Canada. (Tr. 8).
The defendant was given a full Crim.R. 11 plea hearing. The defendant informed the court he was entering his guilty pleas voluntarily and without any coercion. He indicated he signed a plea agreement wherein he understood the State of Ohio would recommend concurrent five year sentences although he could receive the maximum sentence of 16 years.
The defendant stated he understood the trial court would determine his sentence and the court did not follow the State's recommendation. The following discussion took place relating to the events surrounding the crimes charged:
 THE PROSECUTOR: The specific facts which underlie both counts of the Indictment and which the State is prepared to prove would show that on September 13th, 1996, this Defendant, Jason C. Dawson, went to the residence of 804 Blackfoot Trial, and did force his way into the bedroom of Daniel Hartpence, which bedroom was a separately secured and separately occupied portion of the residence of 804 Blackfoot Trial, and Mr. Dawson forced his way into that bedroom with the purpose to commit an assault against Mr. Hartpence. Following an altercation between the Defendant and Mr. Hartpence, still on September 13th, 1996, proceeding out of the residence of 804 Blackfoot Trial, which is in the City of Jamestown, Greene County, Ohio, this Defendant, Jason C. Dawson, did knowingly cause physical harm to Mr. Hartpence by means of a deadly weapon, specifically a knife, by stabbing Mr. Hartpence with the knife.
 THE COURT: Mr. Dawson, were you able to hear the Prosecutor's statement?
THE DEFENDANT: Yes, I was.
 THE COURT: Do you understand that he has described the offenses that you are pleading guilty to?
THE DEFENDANT: Yes, sir.
THE COURT: And is that, in fact, what happened?
THE DEFENDANT: Yes.
(Tr. plea, 7 and 8).
It is clear that the defendant was given a full Crim.R. 11 hearing before entering his plea. The defendant admitted he understood the nature of the charges and their possible penalties. The trial court provided a full hearing on his motion to vacate the plea and gave it full and fair consideration.
At the conclusion of the hearing and before sentencing, the defendant told the trial court he was sorry for what occurred but he didn't believe the charges fit the crime. He said he did not burglarize the house, and that he went over there to get in a fight with Mr. Hartpence, but it was never his intention to stab the victim. (Tr. 15).
In her remarks to the trial judge, Ms. Thompson indicated her client expressed remorse over the stabbing, but his client wanted to make it known that the victim could not go around sexually assaulting women. She said the situation got out of hand because he was provoked by the victim's conduct of sexually assaulting a Miss Brooks that night. (Tr. 15).
Nothing in the defendant's or counsel's statement refutes the burglary charge. The defendant was charged with trespassing in an occupied structure with the purpose to commit a criminal offense in violation of R.C. 2911.12(A)(2).
The defendant's statement that he believed being strangled by the victim "could possibly be considered adequate provocation" depends on whether the victim was merely defending himself from the defendant's attack. The record fails to demonstrate a viable lesser included offense of aggravated assault.
Considering all the factors mentioned in Fish, supra, we cannot say the trial court abused its discretion in denying the defendant's motion. The first assignment of error is overruled.
We also overrule the defendant's second assignment. The selection of appointed counsel is within the discretion of the trial court. Thurston v. Maxwell (1965), 3 Ohio St.2d 92, 93. In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparent unjust verdict. United States v.Calabro (C.A. 1972), 467 F.2d 973, 986. See also, State v. Pruitt
(1984), 18 Ohio App.3d 50; State v. Blankenship (1995), 102 Ohio App.3d 534.
The breakdown in relationships between the defendant and his counsel occurred after the guilty plea. He told the court at the plea he was satisfied with his counsel. His lawyer arranged a plea negotiation identical to the one purportedly arranged by the defendant's Canadian lawyer with the State. There were no apparent conflicts of interest present in the record. There is no evidence that counsel failed in any of her essential duties to her client. In short, the trial court did not abuse its discretion in overruling the defendant's motion to substitute counsel.
The judgment of the trial court is Affirmed.
YOUNG, P.J. and WOLFF, J., concur.
Copies mailed to:
Robert K. Hendrix
David R. Miles
Hon. M. David Reid