Defendant-appellant Taurus Hearns appeals from the convictions which were entered in the Mahoning County Common Pleas Court upon his pleas of guilt. For the following reasons, appellant's convictions are affirmed.
On March 3, 1996, appellant shot three people at the Class Act Lounge in Youngstown, Ohio. He was indicted on three counts of felonious assault in violation of R.C. 2903.11 (A) (2), and one count of having a weapon while under disability in violation of R.C. 2923.13 (A) (3). All four counts carried firearm specifications and the last count carried a physical harm/violence specification.
The court appointed counsel to defend appellant. Because appellant felt that his attorney was not interested in his case, a hearing was held in May 1996. Appellant's attorney stated that he met with appellant at the preliminary hearing and at least four times at the jail. He stated that he failed to return calls from appellant's family for confidentiality reasons. After the hearing, the court overruled appellant's request for new counsel and granted a continuance.
On September 26, 1996, appellant pled guilty to all four counts. In return, the state dismissed the four firearm specifications and the physical harm/violence specification. After a plea hearing, the court found appellant guilty and continued the case pending a pre-sentence investigation. Then, on November 8, 1996, the court sentenced appellant to a range of six to fifteen years on each felonious assault count to run concurrently and one and one-half years on the having a weapon while under disability count to run consecutive to the felonious assault counts. Thereafter, appellant requested, and this court granted, leave to file a delayed appeal.
Appellant's sole assignment of error alleges:
 "APPELLANT'S CHANGE OF PLEA TO GUILTY WAS NOT KNOWINGLY, INTELLIGENTLY, OR VOLUNTARILY MADE."
Appellant's general argument is that he was pressured to plead guilty, i.e. his guilty plea was involuntary. Specifically, appellant contends that a combination of two factors resulted in an involuntary plea. First, appellant claims that there was a lack of communication between himself and his counsel. Appellant points to the hearing on his request for new counsel where he informed the court that he felt his attorney was not interested in his case as a result of unreturned phone calls. Appellant also notes that the transcript of this hearing shows that his counsel had not discussed the prospect of pleading at a point in time which was four days before the trial was originally scheduled.
However, the transcript also demonstrates that the state had yet to provide discovery and the state had yet to reschedule the pretrial conference which it previously canceled. As a result, the court granted a continuance of the trial date. Therefore, any alleged lack of discussions with regards to a plea became moot. Furthermore, appellant's attorney rebutted any implication that communication was insufficient by stating that he met with appellant at least five times in two months and by explaining that he did not return calls from appellant's family for client confidentiality reasons. Additionally, it appears that appellant's concerns may have been allayed at the hearing because when appellant's attorney asked if it was acceptable if he sought a continuance of the trial on appellant's behalf, appellant responded "Whatever you feel is best."
The court conducted the proper hearing on appellant's request for new court-appointed counsel. See State v. Deal (1969), 17 Ohio St.2d 17,20. The court exercised its discretion by declining to appoint new counsel. Based on the aforementioned facts, the court did not abuse its discretion. See State v. Blankenship. (1995),102 Ohio App.3d 534, 558 and State v. Pruitt (1984), 18 Ohio App.3d 50,57 (stating that a defendant is not entitled to a new attorney unless he establishes good cause in the form of a conflict of interest, an irreconcilable conflict, or a complete breakdown of communication). There is no indication of a "complete breakdown of communication" between appellant and his attorney. Appellant characterizes their relationship as chilly. Nevertheless, a client and an attorney need not share "rapport" or a "meaningful relationship." State v. McNeill (1998), 83 Ohio St.3d 438,452 and State v. Henness (1997), 79 Ohio St.3d 53, 66, citing Morris v. Slappy (1983), 461 U.S. 1, 13. "To discharge a court-appointed attorney, the defendant must show "a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.'" State v. Coleman (1988), 37 Ohio St.3d 286, 292. In the case at bar, appellant concedes that trial counsel was not ineffective. Furthermore, he indicated that his attorney fully explained the written plea agreement and the elements and/or definitions of the offenses. (Plea Tr. 9, 15). He also affirmed that he was fully satisfied with the legal representation and advice rendered by his counsel. (Plea Tr. 9). Thus, his argument lacks basis.
Nonetheless, he proceeds to argue that his plea was involuntary based upon a combination of the "chilly relationship" and the pressure that was allegedly placed upon him to plead by the trial court. Specifically, appellant takes issue with the following portions of the plea transcript:
 "THE COURT: And in return for that, the prosecutor is going to stand silent. They're not going to say what I should do with your sentence. That's okay. I don't have to do what they say anyhow.
THE DEFENDANT: Yes, sir.
 THE COURT: But they're not taking a position. Some judges feel heat when the prosecutor says this is what you should do. I don't feel any heat from the prosecutor. So their standing silent is appropriate. I'm going to do what is right anyhow. Do you understand that?" (Plea Tr. 6)
 THE COURT: You are not eligible for probation, so I couldn't give you probation even if I wanted to. Do you know that?
THE DEFENDANT: Yes, sir.
 THE COURT: Now, in all honesty, I don't want to. But I couldn't if I wanted to. Just so that's clear to you. You have to go to jail on these types of charges; okay?" (Plea Tr. 13)
"* * *
 THE COURT: All right. Do you further acknowledge, then, that your decision to plead guilty places you completely and without reservation in my hands, on the mercy of the Court with respect to punishment?" (Plea Tr. 14)
Appellant contends that the above-quoted material implicitly demonstrates that the court's attitude was threatening. Thus, appellant urges that a meaningful dialogue did not occur. Pursuant to State v. Byrd (1980), 63 Ohio St.2d 288, a plea may be involuntary based upon the conduct of the trial court. However, in Byrd, the court actively participated in the plea process by recruiting family members to convince the defendant to plead and by offering to sentence the defendant to the minimum only if the defendant waived his right to a trial. Id. at 293-294. Unlike the court in Byrd, the court in the case at bar did not involve itself in the actual plea-bargain or actively convey the impression that a trial would be futile. See Id.
The above-quoted statements of the trial court are simply realistic explanations of appellant's plea and sentencing. There is no evidence or allegation that appellant would not have pled guilty were it not for these statements of the court. We fail to see how these statements contain any implied pressure to plead. The record demonstrates that the court engaged in the proper Crim.R. 11 dialogue. Such a dialogue is engaged in for the purpose of ensuring that the defendant is entering his plea knowingly, intelligently and voluntarily. State v. Spivey (1998),81 Ohio St.3d 405. 411. As in Spivey, the trial court in the case at hand adhered meticulously to all of the relevant requirements of Crim.R. 11. Thus, we cannot hold there lacked a meaningful dialogue between appellant and the trial court. Accordingly, we do not agree that appellant's guilty pleas were involuntary.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Cox, P.J., concurs.,
Donofrio, J., concurs.,
APPROVED:
 ____________________________ JOSEPH J. VUKOVICH, JUDGE