DECISION.
A jury found appellant Randy Carter guilty of selling cocaine in violation of R.C. 2925.03(A). The trial court sentenced him to a one-year prison term. Finding no error, we affirm.
Carter and the three undercover police officers who had been involved in the alleged purchase of cocaine from Carter testified at trial. (At the time of trial, one of the officers was no longer on the police force.) The officers testified that, before leaving the police station, they photocopied a twenty-dollar bill that they planned to use to purchase drugs. They drove to a Cincinnati neighborhood and randomly chose Carter as the person from whom they would attempt to buy drugs. One of the officers summoned Carter over to their car and asked if Carter had a "20." (In street parlance, this term refers to a twenty-dollar purchase of cocaine.) Initially, Carter suspected that he might be dealing with police and walked away.
Soon afterwards, the officers again saw Carter and called him to their car. When Carter again questioned their identities, they denied that they were police officers. One of the officers asked Carter for a "20." According to the officers, Carter directed them to pull around the corner, where he handed one of the officers some crack cocaine while the officer handed Carter a twenty-dollar bill. At that point, the officers identified themselves as police, and Carter ran. Two of the officers chased Carter and caught him. The other officer stayed in the car with the cocaine. The officers were unable to find the twenty-dollar bill.
Carter was taken to a police station and questioned. One of the officers read Carter his Miranda rights and asked him if he wanted to make a statement. The officer asked Carter to write down what had happened. Carter wrote a statement on the back of the signed Miranda form.
Carter told a different story at trial. He testified that the police attempted to engage him in a drug transaction three times. Each time he identified them as police officers. The last time one of the officers asked for a "rock" of crack cocaine, and Carter handed him a stone he picked off the ground. (Carter claimed that he did not receive any money from the officer.) Carter walked away and the officers jumped out of the car and yelled, "Freeze." Because of his past experiences, Carter ran. When Carter's knee gave out, he fell, and the officers arrested him. According to Carter, he was not read his Miranda rights. He testified that he did not sign the waiver form until after he was forced to write the statement. He claimed that he wrote the statement because one of the officers threatened him, and that the same officer made suggestions about the statement's contents. Carter also testified that the officers photocopied the twenty-dollar bill in his presence after his arrest.
Carter argues in his first and fourth assignments that he was denied effective assistance of counsel because his trial counsel failed to (1) file a motion to suppress his allegedly coerced statement to the police and (2) present an argument in support of his second Crim.R. 29 motion. To prevail on his claims, Carter must demonstrate that his counsel "made errors so serious that counsel was not functioning as the `counsel guaranteed by the Sixth Amendment.'"[1] He must also show that the deficient performance prejudiced him.[2] Prejudice occurred if Carter "was denied some substantive or procedural right that made the `trial unreliable or the proceeding fundamentally unfair.'"[3]
It is difficult to demonstrate ineffective assistance because a defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that the attorney is competent.[4]
In support of his first ineffective-assistance claim, Carter contends that he was not provided his Miranda warnings until after he had given a written statement. In the statement, he said that he had given the officers some drugs and then threw down the money that he received during the transaction. He also claims that he provided the statement because one of the officers threatened him if he did not do so. Even if we were to conclude that the failure to move to suppress Carter's statement was deficient, Carter has failed to demonstrate that counsel's omission prejudiced him. At trial, Carter testified as to his version of the circumstances surrounding his statement, as well as to his version of the drug transaction. The state presented its evidence. The jurors found Carter's version less credible than the officers' version of the events. The failure to move to suppress the statement did not render the trial fundamentally unfair.
Carter also argues ineffective assistance based on his trial counsel's failure to present an argument in support of his Crim.R. 29 motion for judgment of acquittal made at the close of all the evidence. "When a Crim.R. 29 motion for acquittal is made, it is the trial court's responsibility to review the evidence and determine whether the motion should be granted; defense counsel has no obligation to supplement the motion with an argument."[5] Thus, Carter's counsel's failure to argue the motion did not constitute ineffective assistance. We overrule Carter's first and fourth assignments.
In his second assignment, Carter argues that the trial court erred by denying his motion to dismiss counsel and to retain new counsel. After the state presented its case, Carter requested a "change of counsel" based on advice that he had received from a man named Denver, with whom he had spoken in the prisoners' law library, and on the fact that he personally had not received a "discovery packet." (Carter did not know if Denver was an attorney.) When the trial court asked Carter's counsel if he had received discovery, counsel replied that he had. The trial court stated that, without a motion, the trial would proceed. Carter then made a verbal motion for dismissal of counsel. When asked by the trial court if he desired to retain counsel, Carter said he was seeking money to do so. The trial court overruled Carter's motion.
As explained by the Ninth Appellate District, the constitutional right to counsel does not necessarily mean the right to counsel of one's choosing:
The right of counsel must be tempered by the public's right to a prompt, orderly and efficient administration of justice. Attorneys cannot be shed at every stage of the proceeding so as to impede that orderly administration. On the other hand there is a right to discharge counsel because of the personal nature of the services being performed. Thus, it is the trial court's duty to balance the defendant's right to counsel of his preferential choosing against the public interest in the administration of justice.[6]
For Carter to substitute counsel during trial, he had to "show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict."[7] Without such a showing, a trial court's decision to deny a motion for substitution may be reversed only if the defendant can show that the trial court abused its discretion.[8] Having reviewed the record, we conclude that Carter did not demonstrate good cause for the substitution of counsel, and that the trial court properly denied Carter's motion under the facts of this case. We overrule Carter's second assignment.
In his third assignment, Carter contends that the trial court erred by denying his Crim.R. 29 motion for acquittal. Our review of Carter's challenge requires us to determine whether the evidence "[was] such that reasonable minds [could] reach different conclusions" as to whether the state had proved each material element of the offense beyond a reasonable doubt.[9] The material elements to be proved beyond a reasonable doubt in this case were that Carter knowingly sold or offered to sell cocaine. We conclude that, at the close of all the evidence presented at trial, reasonable minds could differ as to whether the state had proved beyond a reasonable doubt that Carter had knowingly sold or offered to sell cocaine. Thus, we overrule Carter's third assignment.
Therefore, we affirm the trial court's judgment.
Hildebrandt, P.J., and Winkler, J., concur.
[1] See Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064.
[2] See id.
[3] State v. Combs (1994), 100 Ohio App.3d 90, 101,652 N.E.2d 205, 211-212, quoting Lockhart v. Fretwell (1993), 506 U.S. 364,370, 113 S.Ct. 838, 844.
[4] State v. Hamblin (1988), 37 Ohio St.3d 153, 155-156,524 N.E.2d 476, 479.
[5] See State v. Patterson (Sept. 22, 1998), Franklin App. No. 97APA12-1682, unreported.
[6] State v. Marinchek (1983), 9 Ohio App.3d 22, 23-24,457 N.E.2d 1198, 1200.
[7] See State v. Robinson (Nov. 3, 1988), Cuyahoga App. No. 54582, unreported, citing State v. Pruitt (1984), 18 Ohio App.3d 50,57, 480 N.E.2d 499, 507.
[8] Id.
[9] See State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.