DECISION AND JUDGMENT ENTRY
This is an appeal from a November 28, 2000 judgment of the Lucas County Court of Common Pleas in which the court accepted jury verdicts finding Derek Marshall guilty of burglary, felonious assault and aggravated burglary and from a December 4, 2000 judgment of the same court ordering Marshall to serve prison terms for his crimes. The appellate counsel appointed to represent Marshall on appeal has followed the procedures outlined in Anders v. California (1967), 386 U.S. 738 to request permission to withdraw from representation. Because our own review of the record reveals at least two arguable issues for appeal, we grant current appointed counsel's request to withdraw and appoint new counsel to brief the issues we identify and any other issues new counsel may discern.
In Anders v. California, id., the United States Supreme Court stated:
 "[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court-not counsel-then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." Id. at 744.
Marshall's counsel has complied with the first three requirements outlined by the United States Supreme Court in Anders. Marshall has not filed a supplemental brief to raise any issues other than those mentioned by his appointed appellate counsel. Accordingly, this court must now proceed to the fourth step and conduct a full examination of the proceedings to determine whether this case is wholly frivolous.
Marshall's counsel has not set forth any potential assignments of error. Instead, he has presented an argument in which he identifies two issues which he says are potential issues for appeal but which he has concluded are not meritorious.
The first potential issue he addresses is the Sixth Amendment right of an accused to confront witnesses. In this case, Marshall was not in the courtroom during his trial. Instead, he was seated in an anteroom where he could see the witnesses who appeared against him. Marshall's appointed counsel concludes that this circumstance was not prejudicial because Marshall "was able to see those witnesses against him and it was his own conduct which caused him to be kept there, as evidenced by the bench discussion held outside the hearing to [sic] the jury, (Jury Trial Transcript pgs. 90-91) and the Court's comments. (Sentencing Transcript pgs. 34). Further, Defendant-Appellant did not object to being held in the Court's ante room."
The second issue identified by appointed appellate counsel is the trial court's denial of Marshall's request for new trial counsel. Marshall asked the trial court to appoint him new trial counsel at a hearing held on November 16, 2000. He informed the judge that he did not believe his trial counsel believed in his innocence and that she would therefore not provide him effective representation at trial. The trial judge denied Marshall's request for a new attorney.
Marshall's appointed appellate counsel also dismisses this issue as a viable argument on appeal because he contends that trial counsel has no obligation to believe in a client's innocence. He says an examination of the record shows that Marshall's trial counsel did provide adequate representation.
Our complete review of the record reveals the following pertinent information. At a hearing prior to his trial Marshall addressed the court and said:
 "Excuse me, Judge. I'd like to say something. Since I feel that this lawyer is not in the best of my interest and I feel that justice cannot be served for me and the best of my interest, I would like to have a new attorney."
The court then asked Marshall if he could afford an attorney, and Marshall answered no. The following exchanges then took place:
 "THE COURT: Ms. Jennings, do you think the relationship between you and Mr. Marshall has been broken down to the point you could not represent him in this case?
 "MS. JENNINGS: I don't believe so, Your Honor. I explained to him yesterday when I talked to him at the jail when I was explaining the plea agreement to him, I told him as his attorney I had a duty to convey any offers that were made by the prosecutor's office to him, that it was his choice to make, that he had a right to a trial, and if he wanted to go to trial we would proceed to trial.
"THE COURT: Mr. Marshall, I don't change —
 "MR. MARSHALL: I asked her — I told her, I said if you feel that you cannot represent me to the best of your ability, really fight for me, if you feel that for the people who accuse me of something that you believe what they say and not believe what I say, not really fight for me, I say you cannot defend me. I said I rather for — to have another attorney. Ever since I been speaking to this attorney, this attorney be talking about, you know, things on they behalf, coming at me questioning me like I'm the guilty party, but I never had nobody come to me and talk to me like, you know, like they believe me. You see what I'm saying? Like they have more emotions and feeling for the other person, not for me. You see what I'm saying? That's why I'm asking for another attorney who will believe and who will fight. I had one who believed in me when I first — the sympathy, they fought for me and I was acquitted, even when things were severe. You see what I'm saying?
 "THE COURT: Mr. Marshall, I don't know any of the facts in this case. All I know is what's in front of me. These are pretty serious charges, aggravated burglary, felonious assault and burglary. I've done many, many cases with Ms. Jennings. She does a very fine job in Court. Sometimes what an attorney advises you, it may be inconsistent with what you think is in your best interest. She indicated what the plea offer was, that you have declined, which is fine, and that's why we have juries and that's why we have attorneys, and I'm sure she'll attempt to contact these witnesses that you gave her the names of, and we'll have a trial in a like —
"MR. MARSHALL: I'd like to have a new attorney.
 "MS. JENNINGS: The Court knows that I also have a duty to explain the evidence to my client that is presented to me through the prosecutor's office in discovery, and perhaps Mr. Marshall was misinterpreting my discussion of that evidence as my being for the victim in this case. I've explained to him that it's his right to have a trial and I will do everything and give him the best defense that I know how to do.
 "THE COURT: The oral request for a removal of counsel will be denied. The matter will be continued — Mr. Marshall, if you can afford —
 "MR. MARSHALL: Ain't no sense in me coming to Court. I ask for justice. I ask —
 "THE COURT: Hey, Mr. Marshall, I would indicate to you —
 "MR. MARSHALL: This is my life. I don't hear nothing. This is my life.
 "THE COURT: Cuff him and take him out of the room. You'll be in this courtroom in the back of the —
 "MR. MARSHALL: Ten years, man. I going back to do no more time like that.
 "THE COURT: Mr. Marshall, all I can assure you, you will not be in the courtroom during this trial. Thank you very much for your comments.
 "WHEREUPON, THE SHERIFF'S DEPUTIES ESCORTED MR. MARSHALL OUT OF THE COURTROOM AND THE PROCEEDINGS CONCLUDED."
The record shows that the next proceeding was the trial. Initially, the trial court granted a motion to suppress filed by Marshall's trial attorney after the state told the court it would not contest the motion. Next, the trial court began conducting voir dire. As part of its preliminary remarks to the potential jurors, the trial court said:
 "THE COURT: The defendant in this case is Mr. Derek Marshall. He is not physically in the courtroom. He is in a little anteroom in the back of the courtroom on the other side of the one-way mirror where he can see and hear everything that's taking place in the courtroom. Nothing is to be inferred by you from the fact that Mr. Marshall is not physically in the courtroom. It could be a number of different reasons for that. We are going to proceed with the trial. There may be a couple of times where we may have to turn the lights on in that room so that a witness may be able to visually see the defendant, but he will not be in a courtroom during the trial itself."
The court and counsel then asked questions of prospective jurors. Neither the prosecutor nor Marshall's attorney presented any challenge to a potential juror for cause. When asked for peremptory challenges, the state passed, and Marshall's trial counsel asked for a moment to ask her client. At a bench discussion held outside the hearing of the jury, she said:
 "I'd like to indicate for the record that I went into the room to ask Derek Marshall whether or not he had any objections to any jurors and if there was anyone that he wanted me to excuse, and he did not answer my question, and so I took that to mean he was satisfied with the jurors as they were."
She did not present any peremptory challenges.
Counsel presented opening statements and the state called two witnesses. The first witness was the victim who testified that she had been attacked in her own apartment, followed to a neighbor's house and beaten there also. At the close of her testimony, the victim was asked if she could identify the person who beat her. Marshall's attorney asked to approach the bench and the following discussion was held:
 "MS. JENNINGS: The last time I saw Derek he was handcuffed in the chair. I would ask that if at all possible that not happened [sic] during the identification.
"THE COURT: Is he just sitting in the chair?
 "OFFICER ZABOROWSKI: He's sitting with his hands behind his back, with his hands behind. I'll take a chance, because he's going to go off.
 "THE COURT: I went back to the room, and they were having an awful time getting him in the chair. It was like three different Court security officers. He's caused so many problems this morning, I'm not going to take a chance. I think through the window they will only be able to see his face. They won't be able to see the handcuffs.
 "OFFICER ZABOROWSKI: It will appear his hands are behind his back, though.
"THE COURT: Turn the lights on.
"OFFICER ZABOROWSKI: We'll do that."
The witness was then allowed to walk to the back of the courtroom and to identify Marshall as her assailant after she looked at him through the window.
The second witness called by the state was the woman who let the victim into her home. The state then rested its case. Marshall's trial counsel made a motion for acquittal pursuant to Crim.R. 29(A) which the trial court denied. Marshall's trial counsel said she had no witnesses to call and that the defense rested. Marshall's trial counsel renewed her Crim.R. 29(A) motion, which the trial court again denied. Counsel then made closing arguments.
The trial court gave the jury instructions, and the jury retired for deliberations. After the jury retired, Marshall's trial counsel made the following statement on the record:
 "I know this is out of sequence. I want to state for the record. When we took one of the breaks, I went back in the anteroom and talked to Derek Marshall and asked him if there was anything else he wanted me to present, and he did not answer me. I also discussed with him or I asked him if he wanted to testify. He did not answer me. I told him that I thought that he should not testify. He didn't respond, and that was the end of the conversation."
The jury ended its deliberations and returned guilty verdicts to each of the three charges against Marshall. The trial court accepted the verdicts, ordered them entered on the record and continued the case for sentencing.
At the sentencing hearing, the trial judge made the following statements:
 "I would further indicate for the record that on two prior occasions the Court has had some problems with Mr. Marshall as far as his conduct in the courtroom, including the fact that on Tuesday, which is the first time in ten years that I've been a Judge that I had to put someone in the obstreperous defendant's room for purposes of the trial. I don't take that lightly, because I think it's a constitutional right of the defendant to be present for the purpose of the trial and to face the jurors.
 "In this particular case, because of Mr. Marshall's conduct, it required the Court to exclude him physically from the courtroom even though he was able to see and hear the proceedings that were going on.
 "I would also indicate for the record that after I removed Mr. Marshall from the courtroom, that I made an attempt to go to the obstreperous defendant's room to advise Mr. Marshall that I would let him back into the courtroom if he got himself under control. He was kicking and fighting so hard with the Court security officers at the time I felt my comments would fall on deaf ears."
The trial judge then heard argument from Marshall's trial attorney regarding sentencing. When asked if he would like to make any remarks, Marshall replied in part:
 "Yes. I had asked you for an attorney, one who would be for me, one who would have a case for me, prepare it. You denied that, and I feel that you was unfair towards me, so therefore, I feel that it wasn't no justice could be served. That's why I didn't participate in it. And I would ask a moment before you had your officers of the Court, you know, come get me, I was going to ask you to remove yourself so I could have a Judge who will grant me — make sure I had a fair hearing, make sure justice was carried out for me."
The trial judge then addressed Marshall. First, he said that the evidence from the trial as well as Marshall's behavior showed Marshall had a hard time controlling his temper. Next, he said he gave Marshall every opportunity to remain in the courtroom so he could assist his attorney. He said:
 "I know that you were displeased with the fact that I wouldn't remove Ms. Jennings as your attorney, but I did not hear any indication that she was unprepared or unwilling to proceed in the representation of you in the course of the trial. * * *"
"* * *
 "THE COURT: And you probably didn't help yourself out any by not cooperating. We had clothes available for you so the jurors would see you other than in jail clothes. I appointed an attorney for you who I've had a lot of cases with and she does a very good job on those cases. I know you were displeased with her conduct, but as a Judge I was not displeased with her representation of you."
The trial judge then ordered Marshall to serve six years for his aggravated burglary conviction, four years for his felonious assault conviction, (the sentences to run concurrently) and one year for his burglary conviction (to be served consecutively with the first two sentences).
Based upon the above information and our own review of applicable law, we find there is an arguable issue regarding whether the trial court abused its discretion in this case when it removed Marshall from the courtroom for his trial prior to trial without first permitting Marshall to be present at trial with a warning that if he engaged in disruptive behavior, he would be removed from the courtroom. See, e.g., State v.Chambers (July 13, 2000), Franklin App. No. 99AP-1308, unreported; Statev. Lane (Mar. 19, 1998), Belmont App. No. 94 B 34, unreported; State v.Smith (Dec. 23, 1997), Franklin App. No. 97APA05-660, unreported; andState v. Green (Nov. 19, 1992), Cuyahoga App. No. 61432, unreported. Cf. State v. Burrage (Jan. 26, 1995), Cuyahoga App. Nos. 66520 and 66521, unreported. See, also, Sixth Amendment to the United States Constitution; Article I, Section 10, Ohio Constitution; Crim.R. 43.
We further find that there is an arguable issue for appeal regarding whether there was such a complete breakdown of communication between Marshall and his appointed counsel that the trial court erred by not granting Marshall's request for new counsel. See, e.g., State v. Murphy
(2001), 91 Ohio St.3d 516, 523-524; State v. Pruitt (1984),18 Ohio App.3d 50; State v. Harrison (Jan. 17, 2001), Summit App. No. 20080, unreported; State v. Cox (Oct. 18, 1999), Clermont App. No. CA99-02-016, unreported; State v. Smith (Dec. 23, 1997), Franklin App. No. 97APA05-660, unreported; State v. Davis (June 4, 1997), Ross App. NO 96CA2181, unreported; and State v. Burrage (Jan. 26, 1995), Cuyahoga App. Nos. 66520 and 66521, unreported. Accordingly, we find that this case is not wholly frivolous.
Since an Anders brief is not a substitute for an appellate brief argued on the merits, McCoy v. Court of Appeals of Wisconsin, District 1
(1988), 486 U.S. 429, 439, and since we have found that arguable issues do exist for appeal, we must proceed to the next step and "appoint counsel to pursue the appeal and direct that counsel to prepare an advocates's brief * * *" before we can proceed to decide the merits.Id. at 444, see, also, Penson v. Ohio (1988), 488 U.S. 75, 85.
Accordingly, we grant the motion to withdraw filed by Ernest E. Bollinger and appoint Jane Randall, 608 Madison Avenue, Suite 1400, Toledo, Ohio, 43604, to prepare an appellate brief for Marshall, discussing the arguable issues already identified by this court in this decision and any further arguable issues which may be found in the record. Marshall's brief is to be filed within forty-five days from the date of this decision. The state's reply brief is to be filed within twenty days after service of Marshall's brief.
PETER M. HANDWORK, J.
MELVIN L. RESNICK, J. and Mark L. Pietrykowski, P.J., CONCUR.