OPINION
Defendant-appellant, Rodger W. Cassell, appeals his conviction in the Clinton County Court of Common Pleas for possession of crack cocaine. We affirm the judgment of the trial court.
On December 12, 1997, following a search of the residence of Lance Nichols, a friend of appellant, in the city of Wilmington, Clinton County, Ohio, the police seized 54.14 grams of crack cocaine and drug paraphernalia in the bathroom. Both appellant and Nichols were present during the search. Appellant was arrested and subsequently indicted on one count of possessing more than twenty-five grams but less than one hundred grams of crack cocaine, a violation of R.C. 2925.11(C)(4)(e).[1] Appellant pled not guilty to the charge. The case was tried to a jury on May 8 and 11, 1998.
Evidence at trial revealed the following facts: On December 12, 1997, the city of Wilmington Police Department went to Nichols' residence at 351 South Mulberry Street to execute a search warrant. Inside the residence were Nichols, appellant, and five other persons, including Nichols' four-year-old son. The police went to the front door of the residence, twice knocked loudly, identified themselves and the reason of their presence, and demanded entry. They obtained no response. Instead, they heard some commotion inside the residence where Nichols and appellant, who had both seen the police pull up and come out of their van, were attempting to flee. Nichols escaped from the residence through the window of a back bedroom only to be apprehended as soon as he hit the ground. Appellant attempted to escape through the back door. However, upon seeing Detective Brian Kratzer's weapon drawn and pointed at the back door, appellant went back into the residence. Soon after, the police forced its entry into the residence where it found two women in the bathroom where the crack cocaine was recovered, namely Susan Pace (aka Susan Stoops) and Nancy Bender; one woman in the doorway of the bathroom, Mary Jane Schumard; and appellant and a Tommy Turner in the hallway. Appellant was less than two feet from the bathroom, "right outside the doorway of the bathroom."
The police seized drug paraphernalia and crack cocaine in the bathroom, specifically, crack pipes from the shower and the toilet, one bag containing 0.95 grams of crack cocaine on the floor, and two bags containing a total of 53.19 grams of crack cocaine inside the toilet. The police observed Susan Pace in the bathroom with her hand in the toilet, over the rim. The police also seized other drug paraphernalia and a kitchen plate with crack cocaine residue on it in a back bedroom. The fingerprint of appellant's left middle finger was found on the plate. At trial, Nichols testified that the back bedroom was used for drug use and drug dealing, and that he had brought the plate in the back bedroom approximately one half-hour before the police arrived to cut up crack cocaine.
The police found $146 on appellant's person, $30 of which was marked money. The marked money was from a $50 controlled purchase of crack cocaine made at the residence shortly before execution of the search warrant. Also found on appellant's person were a pager and a cellular phone. Detective Kratzer testified that appellant's cellular phone constantly rang during the search. Detective Kratzer answered the phone once and a male voice asked him "Rog, are you on?" Detective Kratzer testified that based upon his training and experience as a narcotics undercover officer, the expression meant "are you holding narcotics." After the detective identified himself to the caller, the latter hung up.
At trial, Nichols testified that appellant, who was a good friend, would regularly come to his house to "play hoop," to watch college football, and to drink beers. Nichols admitted selling crack cocaine from his residence, which he would buy in Dayton or Xenia a couple of times a week. While Nichols stated that he had never seen anybody sell crack cocaine from his house, Nichols also stated he allowed "people to take care of their business in [the] back bedroom." Nichols admitted that appellant would go with him on some of his trips to Dayton or Xenia, and that while they would not deal drugs in front of one another, they would discuss dealing crack cocaine. Nichols testified he never saw appellant use crack cocaine. Nichols described the three women present at his house during the search as crack cocaine users. Detective Kratzer explained that users never have crack cocaine on their person because they smoke it.
Nichols testified that three days before the execution of the search warrant, he, appellant, and Turner went to Dayton to purchase crack cocaine. There, Nichols bought thirteen to fourteen grams of crack cocaine (or half of an ounce), while appellant bought about ten grams. On cross-examination, Nichols stated that to his knowledge, the amount appellant bought in Dayton was less than his. Nichols testified that on the day of the search, to his knowledge, appellant did not bring crack cocaine to his house. Nichols also testified that he did not think appellant had any drugs on his person that day. Yet, Nichols could not explain how the bags of crack cocaine ended up in the toilet. Nichols explained that he always kept his crack cocaine on his person and that he never stored it in the toilet. Nichols also stated that on the day of the search, he did not throw his crack cocaine to appellant before he jumped out of the window, but rather that he jumped out of the window with what was left from his earlier purchase; 3.38 grams of cocaine was found on Nichols' person. Nichols said that the police were unfairly trying to place the blame on appellant for the crack cocaine seized in his residence.
Cindy Sells became acquainted with appellant because of drugs. Sells testified that she would see appellant on a weekly basis, and sometimes more than once a week. Sells testified that in December 1997, she met appellant several times (no more than ten times) at Nichols' residence specifically to buy crack cocaine from appellant. Sells testified that whenever she went to Nichols' residence, she bought crack cocaine only from appellant.
Detective Kratzer testified that activity at Nichols' residence fit a drug trafficking profile. Detective Kratzer described an incident where Sells went to Nichols' house, "knocked on the [front] door, spoke with somebody, got back in the car, did not enter the house, and left. They went to a pay phone * * * in Wilmington, either paged or called somebody, * * * and while they were on their way back the officers that had stayed on the house watching it advised that [appellant] pulled up in a small car. When we got back, she was able to purchase the drugs and leave."[2] Detective Kratzer denied targeting specific persons.
At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A). The trial court denied the motion. At the close of the evidence, a jury found appellant guilty as charged and appellant was sentenced accordingly. This timely appeal follows in which appellant raises three assignments of error which will be considered out of order.
In his third assignment of error, appellant argues that the trial court erred in not dismissing the unfairly constituted jury. The record shows that appellant's trial counsel objected to the jury's composition and impaneling on the ground that "my client is an African-American and my observation of the potential 34 witnesses [sic] that were called in the jury at large, there were no African Americans * * * ." In essence, appellant contends that the jury's composition violated his constitutional rights to a representative cross-section of the community and an impartial jury.
"A party challenging the entire jury panel has the burden of showing that the jurors were either unlawfully empaneled or that the jurors cannot be fair and impartial." State v. Scurry (July 29, 1996), Madison App. No. CA95-09-031, unreported, at 6. "This court will not reverse the trial court's decision not to dismiss an entire jury panel absent an abuse of discretion." Id.
"It has never been held under either the Sixth Amendment right to a fair and impartial jury or under the Fourteenth Amendment guarantee of equal protection of the laws that a defendant has a constitutional right to have a member of his race represented on the jury panel." State v. Towns (10th Dist. Dec. 10, 1991), No. 91AP-310, 1991 Ohio App. LEXIS 5988, at *8, citingTaylor v. Louisiana (1975), 419 U.S. 522, 95 S.Ct. 692. Rather, "[t]he right to trial by an impartial jury means that prospective jurors must be selected by officials without the systematic and intentional exclusion of any cognizable group. However, it is not necessary that every jury contain representatives of all economic, social, religious, racial, political and geographical groups of the community." State v. Johnson (1972), 31 Ohio St.2d 106, 114.
To establish a violation of the constitutional right to a representative cross-section of the community, it must be demonstrated that "(1) * * * the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."Duren v. Missouri (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668.
After reviewing the record, we find there is no evidence the trial court abused its discretion by refusing to dismiss the jury. First, appellant did not demonstrate and there is no evidence in the record to suggest that the jury panel was not impartial. Second, there was absolutely no evidence that African-American jurors were improperly excluded or that they were available to be members of the venire. It is well-established that Ohio's system of selecting jurors from qualified electors of the county is constitutional. Johnson at paragraph two of the syllabus. In the case at bar, the trial court was confronted with a facially nondiscriminatory result of a sanctioned random selection process. Appellant's sole challenge to the array was based on his desire to have a member of his race represented and his unsubstantiated assumption that he would not get a fair trial from a jury without a member of his race. Finally, appellant did not demonstrate and there is no evidence to suggest that African-Americans are generally underrepresented in Clinton County venires from which juries are selected or that there is a systematic exclusion of this group from the jury selection process. We therefore find that the trial court did not abuse its discretion in not dismissing the jury. Appellant's third assignment of error is overruled.
In his first assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29(A) motion. In his second assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. At the heart of both arguments is appellant's claim that the state failed to show beyond a reasonable doubt that appellant "possessed" the crack cocaine.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. This court's standard of review of a claim of insufficient evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, * * * followed).
In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact-finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 389. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. State v. Haynes (1971),25 Ohio St.2d 264, 269-270. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. State v.Hankerson (1982), 70 Ohio St.2d 87, syllabus, certiorari denied (1982), 459 U.S. 870, 103 S.Ct. 155. Thus, constructive possession can exist without physical contact as long as the person has the ability to exercise dominion and control over the object at issue. State v. Boyd (1989), 63 Ohio App.3d 790, 796. While dominion and control over an object is not proved by a person's mere presence in the vicinity of the object, the person's proximity to the object may nevertheless constitute some evidence of constructive possession. State v. Pruitt (1984), 18 Ohio App.3d 50,58.
Possession is a voluntary act if "the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession." R.C. 2901.21(C)(1). "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "That the defendant exercised dominion and control over drugs may be indirectly proven, through circumstantial evidence * * * ." State v. Combs (2d Dist. Sept. 10, 1991), No. 11949, 1991 Ohio App. LEXIS 4277, at *14, citing UnitedStates v. Craven (C.A.6, 1973), 478 F.2d 1329.
After thoroughly reviewing the record, we find that appellant had the ability to direct or control the use of the bags of crack cocaine found in the toilet and that he constructively possessed the crack cocaine. The record shows that three days before the execution of the search warrant, appellant went to Dayton where he bought crack cocaine. The record also shows that appellant sold crack cocaine from Nichols' residence several times in December 1997. Nichols testified that he and appellant would discuss dealing drugs although they would not deal in front of one another. Nichols testified that the three women present in his residence during the search were crack cocaine users, not dealers, and that Turner would help him make deliveries. There was no testimony at trial that Turner was a drug dealer.
The record also shows that as a result of the search, the police seized crack cocaine in the toilet and a plate with crack cocaine residue and appellant's fingerprint on it in a back bedroom. Nichols testified he brought the plate to the room only a short time before the police arrived. Nichols, the lessee of the residence, also testified that he did not know how the crack cocaine ended up in the toilet as he did not store his own in the toilet but rather kept it on his person where it was found after he jumped out of the window. Appellant was found less than two feet from the bathroom where the crack cocaine was recovered. We find the foregoing is circumstantial evidence that appellant had the ability to exercise control over the bags of crack cocaine recovered in the toilet, and thus that he had constructive possession of the crack cocaine.
We further find that appellant was "conscious of the presence of the object." The record shows that as the police were demanding entry into Nichols' residence, appellant attempted to escape through the back door of the residence. We find that this evidence is "sufficient to support an inference that appellant had knowledge of the illegal drugs and, therefore, knowingly possessed the drugs." State v. Thomas (1995), 107 Ohio App.3d 239, 245.
In accordance with the standards of review articulated above, we find that appellant's conviction for possession of crack cocaine was supported by sufficient evidence and that it was not against the manifest weight of the evidence. Appellant's first and second assignments of error are overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance. If the drug involved is more than twenty-five grams but less than one hundred grams of crack cocaine, the offense is a felony of the first degree. See R.C. 2925.11(C)(4)(e).
[2] Detective Kratzer explained that Sells was not a confidential informant but an unwitting source, that is, "a person who does not know the individual [that] may be riding with them or driving them around is a police officer. They just think we're another person wanting to buy rock."