JOURNAL ENTRY AND OPINION
Defendant-appellant Venson Price appeals from his conviction for possession of cocaine in violation of R.C. 2925.11. The appellant was sentenced to a one-year term of imprisonment. A stay of execution was granted by this court.
On December 16, 1997, Cleveland Police Officer Michael Connelly observed the appellant, who was driving a blue Cadillac, make a right turn over the curb, over the sidewalk, and onto the front lawn at 4071 East 93rd Street, Cleveland, Ohio. The Cadillac came to rest on the lawn, almost in the middle of the house. The appellant was traveling northbound on East 93rd Street, and Officer Connelly and his partner, Officer Arnell Rose, were in a zone car headed southbound. Another zone car, manned by Officers Wagner and Hunt, was in the area as well.
As the zone car approached, Officer Connelly noticed a male begin to walk down the driveway and when the male noticed the zone car, he turned and ran (T. 18). This unknown male was not pursued by the officers. Officer Connelly parked his zone car and turned on the overhead lights. The second zone car pulled to the right of Officer Connelly's vehicle. All four officers exited. Officer Rose accompanied Officer Connelly to the driver's side of the parked Cadillac. Officer Wagner and Officer Hunt proceeded to the passenger side of the vehicle.
Although there were street lights, flashlights were used to obtain a better view. As he approached the vehicle, Officer Connelly observed the driver "laying over" and, immediately prior to reaching the car door, observed him make a quick motion "all the way down" (T. 20). Because of the flashlight, Officer Connelly was able to observe the appellant's movements as he approached the Cadillac. At this point the officers were concerned with their safety because it was 4:20 a.m., very dark, and in a high-crime neighborhood. There was a concern that there might be a weapon in the vehicle (T. 21).
Officer Connelly knocked on the car window, prompting the driver, the appellant, to roll down the window. The appellant was asked if he had a driver's license, but responded that he did not. The appellant complied with the request to step out of the vehicle. After the appellant was out of the vehicle, Officer Connelly observed an open bag on the seat in the place the appellant had just vacated. Inside and around the bag were rocks of crack cocaine. The appellant was patted down for weapons and escorted to the zone car by Officer Hunt. Officer Connelly then retrieved the bag from the Cadillac. There were eleven rocks of crack cocaine on the driver's seat. Eventually, the officers searched underneath the front seat. This search revealed another baggie containing more rocks of crack cocaine.
The appellant was handcuffed and read his Constitutional rights. He gave the officers his social security number and an address on Lee Road. A search of the appellant incident to arrest revealed marijuana and $250 in cash (T. 28).
The proximity of the drugs to the appellant led Officer Connelly to believe that the drugs belonged to the appellant. His observations of the scene did not lead him to believe the drugs belonged to anyone else CT. 59). There is no question but that the drugs belonged to the appellant CT. 59). The drugs found underneath the seat were located below the steering wheel and a few inches underneath the seat.
The second person in the vehicle, Ms. Johnson, was also placed under arrest. Ms. Johnson exited the Cadillac without incident, but as she was being questioned by Officers Rose and Wagner, it became apparent that she had something in her mouth as she was unable to speak properly. After three or four requests, Ms. Johnson voluntarily spit out two rocks of crack cocaine. Officer Connelly observed no movements from Ms. Johnson which drew his attention. Ms. Johnson was read her Constitutional rights and placed under arrest.
On cross-examination, Officer Connelly elaborated regarding the appellant's movements upon his approach to the Cadillac. While Officer Connelly could not clearly see the appellant's movements, he did observe the appellant fidgeting in the vehicle and leaning over. The appellant was fidgeting "between his legs and in, and then what I believe to be something under the seat." (T. 40). The appellant's head was down, and just as the officer arrived at the side of the Cadillac, the appellant lunged down, but not for a long period of time (T. 40).
Cleveland Police Officer Douglas Hunt corroborated the testimony of Officer Connelly. Officer Hunt observed the appellant make a quick lunging motion underneath the front seat of the vehicle (T. 69). He placed the appellant in the zone car and then assisted Officer Connelly remove the contraband from the appellant's vehicle. When the appellant exited his vehicle, it was clear that he had been sitting on the drugs (T. 74).
Officer Connelly's testimony was also corroborated by his partner that evening, Cleveland Police Officer Arnell Rose. Officer Rose' attention was focused on the passenger, Shaneek Johnson. He observed movement in the car, but the passenger remained still. Ms. Johnson had difficulty speaking when Officer Rose and Officer Wagner began to question her. Ms. Johnson was very cooperative when asked to step out of the vehicle. After she was asked twice, Ms. Johnson spit out the contents of her mouth, two rocks of crack cocaine. Ms. Johnson was placed under arrest.
Ms. Quiana Thomas testified on the appellant's behalf. She testified that the two lived together in a home at 4071 East 93rd Street, but that the appellant has an address on Lee Road with his mother (T. 122). Ms. Thomas has two small children, the baby's father is the appellant. The baby awoke around 3:00 or 3:30 a.m. Ms. Thomas changed the baby while the appellant made a bottle. The appellant then went outside to smoke. Just after the appellant exited the house, Ms. Thomas heard the car door as the appellant entered the car. The baby finished the bottle and fell asleep. Ms. Thomas then heard another car door. A few minutes later she saw the flashing lights of the zone cars.
Ms. Thomas looked out of her window and saw an officer handcuff the appellant and place him in a police car. She also testified that the officers were trying to get the female passenger out of the car. The officers told the woman to "spit them out" before she was maced (T. 128). The officers had their hands around her neck telling her to "spit them out." (T. 128). Ms. Thomas recognized this woman as Shaneek Johnson, someone who lives on the west side, but hangs around the neighborhood.
Ms. Thomas dressed and then went outside. The officers politely answered her questions, but did not inquire as to whether or not she had observed anything or as to her relationship with the appellant.
The appellant took the stand on his own behalf. Mr. Price testified that he has previous convictions for possession of drugs, but that he served his time and that he has had no arrests for the past seven years. He purchased a home at 4069 East 93rd Street for one thousand dollars and has spent time and effort in rehabilitating the home. The appellant testified that he has held three part-time jobs in order to support Ms. Thomas and their children. Ms. Thomas was pregnant when they first started seeing each other, but he is the only father that the older child has known. The younger child is his biological child.
The appellant's rendition of the evenings events tallies with that of Ms. Thomas. The baby awoke. Ms. Thomas changed the baby's diaper while he prepared the bottle. While Ms. Thomas was feeding the baby, he went outside to smoke. Ms. Thomas does not allow smoking in the house because of the baby. The appellant decided to smoke in the car, rather than on the porch, because it was cold outside.
The appellant testified that he was about to exit the car after his cigarette when Shaneek Johnson approached and asked for a ride to the west side. The appellant responded in the negative. Ms. Johnson exited the vehicle and walked to the corner to the fish market. As he was sitting there, the appellant observed two zone cars pass twice. Ms. Johnson returned from the corner and entered the car once again. This time she offered to pay the appellant ten dollars for a ride to the west side. In his neighborhood, someone asking for a ride is not unusual as there is little public transportation. The appellant again declined to transport Ms. Johnson to the west side. Before Ms. Johnson could exit the vehicle, the police arrived.
During the time he was outside, the appellant observed zone cars traveling up and down East 93rd Street. The appellant was unable to identify specific vehicles. When the police pulled in near his home, his car door was open. The police pulled him out of his car and handcuffed him. In response to the officers' question he informed them that he had a driver's license, but that he was unsure as to which pocket. The police were unable to locate the license during their pat-down search at the scene. The police found his wallet in a pocket during the search at the police station.
He was placed in a zone car and was unable to see what was happening in his own vehicle. He did observe the police choking Ms. Johnson prior to taking her away in a different zone car. The appellant saw an officer lean into the appellant's vehicle and when the officer returned to the zone car, he threw a bag containing rocks of cocaine on the dashboard.
The appellant testified that his vehicle registration properly reflects his address on East 93rd Street. His driver's license has his mother's Lee Road address because that is where he was living when he obtained the license.
The appellant denied having or being in possession of crack cocaine on the day in question.
The appellant sets forth two assignments of error.
The first assignment of error:
 THE APPELLANT'S CONVICTION FOR POSSESSION OF DRUGS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
The appellant asserts that the court erred in failing to grant the Crim.R. 29 motion for acquittal since there was insufficient evidence to show that the appellant knowingly possessed the crack cocaine.
In State v. Thompkins (1997), 78 Ohio St.3d 380, the court found that with respect to sufficiency of the evidence, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.Id. at 386. In addition, a conviction based upon legally insufficient evidence is a denial of due process. Thompkins,supra, citing to Tibbs v. Florida (1982), 457 U.S. 31, 45. As Justice Cook succinctly stated in the concurrence of Thompkins, a challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.
The elements of the crime of drug possession are set forth in R.C. 2925.11 (A) as "[n]o person shall knowingly obtain, possess, or use a controlled substance." In this case there is no contention that the appellant used or obtained the crack cocaine, only that he possessed the drugs.
Possession may be actual or constructive. State v. Haynes
(1971), 25 Ohio St.2d 264. Since the drugs were not found on the appellant's person, the state was required to show that the appellant constructively possessed the drugs. The mere presence of a person in the vicinity of contraband is insufficient to support the element of possession. State v. Wolery (1976),46 Ohio St.2d 316. However, if the evidence demonstrates defendant was able to exercise dominion or control over the objects, defendant can be convicted of possession. Id. Moreover, where an amount of readily usable drugs is in close proximity to a defendant, this constitutes circumstantial evidence to support the conclusion that the defendant was in constructive possession of the drugs. State v. Scalmato (March 20, 1997), Cuyahoga App. No. 70822, unreported; State v. Pruitt (1984), 18 Ohio App.3d 50. Circumstantial evidence alone is sufficient to support the element of constructive possession. State v. Jenks (1991),61 Ohio St.3d 259.
In the case sub judice, the police officers testified that they observed the appellant lean over while he was seated in the driver's side of the vehicle. The appellant was described as "fidgeting" and was seen with his head down. Officer Connelly testified that the appellant was "laying over" and he observed him make a quick motion "all the way down." Ultimately, the officers found a baggie of crack cocaine which would have been directly underneath the appellant as he was seated in the car. Another baggie containing crack cocaine was found underneath the driver's side of the vehicle. This evidence, although circumstantial, was sufficient upon which to base a conviction.
The appellant's first assignment of error is overruled.
The second assignment of error:
 THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The appellant argues that the evidence at trial was extremely uncertain and unreliable.
The Thompkins Court, supra, illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594:
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
Thus, as the concurring opinion noted, when deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact. Thompkins, (Cook, J., concurring) citing to State v. DeHass (1967), 10 Ohio St.2d 230.
This court acknowledges that the appellant presented a very different case to the jury than did the prosecution, and had the jury chosen to believe the appellant's version of events, a judgment of acquittal would have been rendered. However, the prosecution presented evidence that the appellant was in the vehicle in the early hours of the morning; that the appellant owned this vehicle; that he made movements while the police were observing him; that by these movements the appellant appeared to be placing something under the seat; that drugs were recovered from the very place the appellant was sitting; and that drugs were recovered from underneath the seat. On cross-examination, the appellant indicated that he did not believe that Ms. Johnson placed the drugs in his vehicle. The state met its burden of persuasion.
The appellant's second assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, A.J., and ANN DYKE, J., CONCUR.
 ________________________________ JAMES D. SWEENEY JUDGE