JOURNAL ENTRY AND OPINION
Lorenzo C. Collier appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of possession of drugs and preparation of drugs for sale. On appeal, Collier argues that the court should have granted his motion for acquittal, and challenges the sufficiency and weight of the evidence presented by the prosecution. Further, he complains of prosecutorial misconduct and ineffective assistance of counsel. After careful review of the record, we reject these contentions and affirm the judgment of the trial court.
The record before us reveals that, on June 20, 2000, the grand jury indicted Collier for possession of drugs and preparation of drugs for sale. Collier waived his right to a speedy trial, and the jury trial of this case commenced on October 16, 2000.
The state called as its first witness Detective John Dlugolinski of the Cleveland Police Department's Narcotics Unit. He testified that, on January 25, 2000, around 8:30 p.m., he and his partners, Officers Smith and Huddleston, received a dispatch call regarding a complaint of three males selling drugs in the common hallway of an apartment building at 9621 Union Avenue, in Cleveland, Ohio. He testified that this apartment building had a well-known reputation for drug sales, and therefore, the custodian had given police a key to the building.
The officers parked their zone car, and then proceeded on foot into the vestibule of the building. As they entered the hallway, Detective Dlugolinski looked up through the stair rail and saw three males matching the description of the dispatch call huddled on the landing. The detective identified the three males as Collier, Anthony Turner, and LaShawn Azcue. He testified that his experience suggested that this type of conduct indicated possible drug activity.
The officers ordered the suspects to show their hands. Turner responded by making a furtive movement, turning his back, and trying to place something in his mouth. Detective Dlugolinski testified that drug dealers have a well-known practice of trying to swallow drugs before police can get them. The detective tackled Turner as the suspect attempted to enter a nearby apartment. As they fell into the apartment, two rocks of suspected crack cocaine fell to the ground.
Once inside the apartment, Detective Dlugolinski noticed a strong odor of marijuana and that the occupants were drinking alcohol. During the course of their investigation, the officers discovered that Collier had supplied eighteen-year-old Gary Dozier with beer.
The officers arrested Dozier for underage drinking, Collier for furnishing alcohol to him, and Turner for possession of the two rocks of crack cocaine. The officers then searched the three suspects for weapons, and placed them in the back seat of the police car, with Collier on the passenger's side, Dozier in the center, and Turner on the driver's side.
Detective Dlugolinski testified that prior to placing the suspects in the car, as part of standard procedure, the officers removed the back seat of the car to check for contraband. He further testified that they handcuffed the suspects' hands behind their backs, and placed them shoulder-to-shoulder in the back of the car, and concluded therefore that if one of the suspects attempted to hide something beneath the seat, the other two would have known about it. In addition, he testified that all three suspects had access to the center portion of the back seat.
The officers transported the three suspects to the fifth district jail, removed the suspects from the car, and Detective Dlugolinski immediately checked the rear of the zone car by lifting up the back seat — this search uncovered a bag of ten to twelve rocks of crack cocaine. The detective showed the bag to the three suspects, and none of the three men acted surprised — he described their demeanor as nonchalant.
Detective Dlugolinski testified as to the chain of custody of this bag of crack, which tested positive for cocaine in the amount of 2.23 grams. He further testified that crack cocaine in that quantity indicated an intent to sell as opposed to personal use. He stated that users typically only buy one or two rocks of crack at a time for personal use.
The state then called Officer Dennis Wondrak, one of Detective Dlugolinski's partners that evening, who corroborated the detective's testimony. The state presented its exhibits and rested. The defense moved for acquittal, and the court denied this motion. The defense then rested without presenting a case-in-chief.
After deliberation, the jury returned a verdict finding Collier guilty of possession of drugs and preparation of drugs for sale. On November 20, 2000, the court sentenced Collier to concurrent prison terms of nine months as to each count.
Collier now appeals, raising five assignments of error for our review. We will consider the first three together because they contain similar issues of law and fact. They state:
 I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S RULE 29 MOTION WHEN THE STATE FAILED TO OFFER EVIDENCE SUFFICIENT TO SUSTAIN A CONVICTION ON EITHER THE POSSESSION OR THE PREPARATION FOR SALE CHARGE.
 II. THE JURY'S DECISION FINDING THE DEFENDANT GUILTY OF POSSESSION AND PREPARATION FOR SALE WAS NOT SUPPORTED BY SUFFICIENT PROBATIVE EVIDENCE.
 III. THE JURY'S DECISION FINDING THE DEFENDANT GUILTY OF POSSESSION AND PREPARATION FOR SALE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Collier urges that there is no evidence linking him to possession and preparation for sale of the crack cocaine found in the back seat of the zone car except his mere presence in the back of the car with two other people. He maintains that the state failed to present sufficient evidence to establish the elements of each charge, that the trial court should have granted his Crim.R. 29(A) motion for judgment of acquittal, and furthermore, that the jury convicted him against the manifest weight of the evidence. The state asserts that sufficient circumstantial evidence supports that Collier and Turner jointly possessed the crack cocaine and that his conviction is not against the manifest weight of the evidence.
As to the claim of insufficient evidence, Crim.R. 29(A) states, in relevant part:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387, the court set forth the following standard for sufficiency of the evidence:
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy.
 Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.
 Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
Then, at page 387 of the Thompkins opinion, the court set forth a distinct standard of review for manifest weight appeals, stating:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 Ohio Op. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B.Rep. 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
The elements of possession of drugs is set forth in R.C. 2925.11(A), which states, No person shall knowingly obtain, possess, or use a controlled substance. Former R.C. 2925.07(A), which the legislature repealed effective February 13, 2001, set forth the elements of preparation of drugs for sale, stating, No person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance when the person intends to sell or resell the controlled substance or when the person has reasonable cause to believe that another person intends to sell or resell the controlled substance.
Recently, in State v. Smith (May 24, 2001), Cuyahoga App. No. 78277, unreported, we stated:
 We further note that possession of a drug includes possessing individually, or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others. See 4 OJI 409.50. Finally, as the court instructed in State v. Jenks (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492, circumstantial evidence and direct evidence inherently possess the same probative value.
Likewise, in State v. Johnson (May 31, 2001), Cuyahoga App. No. 78305, unreported, we stated:
 Although the mere presence of a person in the vicinity of contraband is not enough to support the element of possession, if the evidence demonstrates defendant was able to exercise dominion or control over the illegal objects, defendant can be convicted of possession. State v. Wolery (1976), 46 Ohio St.2d 316, 348 N.E.2d 351; cf., State v. Haynes (1971), 25 Ohio St.2d 264, 267 N.E.2d 787. Moreover, where an amount of readily usable drugs is in close proximity to a defendant, this constitutes circumstantial evidence to support the conclusion that the defendant was in constructive possession of the drugs. State v. Benson, 1992 Ohio App. LEXIS 6503 (Dec. 24, 1992), Cuyahoga App. No. 61545, unreported; State v. Pruitt (1984), 18 Ohio App.3d 50, 480 N.E.2d 499. Furthermore, circumstantial evidence alone is sufficient to support the element of constructive possession. State v. Jenks, supra; State v. Lavender, 1992 Ohio App. LEXIS 1069 (Mar. 12, 1992), Cuyahoga App. No. 60493, unreported.
Here, the totality of the evidence, although mainly circumstantial, supports the conclusion that Collier had joint and/or constructive possession of the crack cocaine found in the back of the police car: the police received a complaint that three males were selling drugs in the hallway of an apartment building at 9621 Union; this building is well known for drug activity; when the officers arrived, they found three men fitting the description of the complaint — Collier, Turner and Azcue — huddled closely in the hallway, which is indicative of drug activity; the officers arrested Turner when he dropped two rocks of crack cocaine, arrested Collier for furnishing alcohol to a minor, and arrested another male, Dozier, for underage drinking; prior to placing the three arrestees in the back seat, the officers checked their zone car and found it free of contraband; the officers placed Dozier, who did not appear to be involved in the drug activity, in the center of the back seat; all three men had access to the middle section of the back seat where the police found the drugs; the suspects were placed shoulder-to-shoulder in the car with their hands handcuffed behind their back; and, therefore, hiding drugs would have produced fidgeting and jostling, yet Collier said nothing; and Collier did not appear surprised when the detective confronted the men with the cocaine and, instead, acted nonchalant.
We recognize that possession of a drug may not be inferred solely from Collier's presence where the drugs were found. See R.C. 2925.01(K). However, the state in the instant case presented additional circumstantialevidence for a trier of fact to infer his possession of the crack cocaine. Therefore, we have concluded that a trier of fact could have, on the basis of the circumstantial evidence presented, found beyond a reasonable doubt that Collier had joint or constructive control over the cocaine.
As for the charge of preparation of drugs for sale, Detective Dlugolinski testified that the quantity of drugs found in the back of the zone car, ten to twelve rocks of crack cocaine, indicated that the men were dealers. As established above, Collier had joint or constructive possession of a controlled substance in a quantity which evidences an intent to sell. Even if the drugs belonged to Turner, as Collier urges, he had a reasonable cause to believe that Turner had intended to sell the drugs. Accordingly, we also sustain this conviction and reject these assignments of error.
 IV. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT.
 V. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO ADEQUATELY REPRESENT HIM AT TRIAL.
Next, Collier complains of several instances of alleged prosecutorial misconduct. Further, he claims that his trial counsel's failure to object to the same challenged questions and comments constituted ineffective assistance of counsel.
Determination of whether improper remarks constitute prejudicial prosecutorial misconduct requires analysis as to (1) whether the remarks were improper and, (2) if so, whether the remarks prejudicially affected the accused's substantial rights. State v. Mason (1998), 82 Ohio St.3d 144,161. To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred. See State v. Campbell (1994), 69 Ohio St.3d 38, 51.
When a defendant fails to object to alleged prosecutorial misconduct at trial, he waives all but plain error on appeal. State v. Jones (2001),91 Ohio St.3d 335, 353. "Plain error does not exist unless, but for the error, the outcome at trial would have been different." Id. at 343, quoting State v. Joseph (1995), 73 Ohio St.3d 450, 455. In this case, Collier's counsel failed to object to any of the allegedly improper comments or questions, and, therefore, he has waived all but plain error on appeal.
He first challenges a portion of the prosecution's opening statement where she said, This is a building that's well known to them. This is a building where a lot of drug activity goes on. The call involved drug activity taking place at that time. (Tr. 78.)
We reject Collier's challenge to these comments by the prosecutor during opening statements for three reasons. First, the trial court specifically instructed the jury that opening statements were not evidence and should not be considered as such (Tr. 174.), and we must presume that the jury followed this instruction. See State v. Oldham (May 13, 1999), Cuyahoga App. No. 73644, unreported. Second, we have concluded that Collier would have been convicted even without these comments. Third, these comments were not improper because they were supported by the evidence. In particular, Detective Dlugolinski testified:
 So we received a call that there were three males in the hallway at, I believe, at 9621 Union Avenue, a high and well known drug area where drug sales are, numerous times to respond to that location inside the hallway. They don't live there and they are selling drugs. (Tr. 86.)
Likewise, when asked on direct about his familiarity with this apartment building, Detective Wondrak testified:
 Yeah. We have had numerous complaints of drug activity. We had commander's complaints of drug activity, we have had arrests in and around the building of various situations like drug activity, prostitution, other things associated with drug addicts. (Tr. 131-132.)
Collier next complains that the prosecution began her direct examination of Detective Dlugolinski by asking, Did you have occasion to make an arrest in connection with the possession of illegal drugs on January 25th, 2000 at approximately 8:30 p.m.? (Tr. 85.) Likewise, she asked Officer Wondrak, Did you have occasion to make a drug arrest about approximately 8:30 that evening? (Tr. 130.) Collier complains that these questions were inaccurate because the officers arrested him for furnishing alcohol to an underage person. However, this contention overlooks the fact that the officers made a drug arrest — they arrested Turner, for possession of two rocks of crack cocaine. Moreover, both officers plainly testified that they arrested Collier for furnishing alcohol to a minor (Tr. 92, 134-135.), therefore clarifying any possible misconception in this regard.
Collier next takes issue with the following questions asked by the prosecution during her direct examination of Office Wondrak: In your experience, is it common for people that are involved in the sale of illegal narcotics to work together; When you see a group of people huddled together in what you would believe to be a drug transaction, is that commonly done when there is more than one person involved in the sale of those particular drugs?; and And do they often work together to protect each other from being held criminally responsible? (Tr. 146-147.) Collier urges that this line of questioning is improper — we disagree.
The court properly allowed Officer Wondrak, a four-year veteran of the police force, to testify about the custom and practice of drug dealers. Further, assuming arguendo that these questions were improper, they were not prejudicial enough to change the outcome of the trial. Accordingly, we reject Collier's claims of prosecutorial misconduct and overrule his fourth assignment of error.
Next, Collier maintains that his trial counsel's failure to object to the same comments and questions constituted ineffective assistance of counsel. In addition, he urges that his counsel should have objected when the prosecutor asked Detective Dlugolinski, And if three males are back there shoulder to shoulder, would all three males, if one of them was doing something, hiding contraband, would the other two males necessarily know that that was going on? (Tr. 105.) Further, he claims his counsel should have objected to Officer Wondrak's testimony, We were advised from radio that there were three males selling drugs in the hallway of 9621 Union Avenue. (Tr. 131.)
To sustain a position that his counsel had been ineffective, Collier must demonstrate both deficient performance and that but for such conduct, the outcome of the trial would have been different. See Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136. In general, the failure to object alone is not enough to sustain a claim of ineffective assistance of counsel. See State v. Dumars (Apr. 12, 2001), Cuyahoga App. No. 78075, unreported, citing State v. Fears (1999), 86 Ohio St.3d 329. Further, the decision to object to the admission of evidence is a trial tactic, which we will not second guess on appeal. See State v. Carrion (1992), 84 Ohio App.3d 27, 32.
Here, counsel's tactical decision not to object to challenged comments, questions and testimony did not constitute insufficient performance. As we have already determined that most of these remarks were appropriate, counsel would have been justified in forming the same opinion during trial. Accordingly, we reject Collier's claim of ineffective assistance of counsel and overrule the fifth assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, ADM.J. and ANN DYKE, J. CONCUR TERRENCE O'DONNELL