OPINION *Page 2 
{¶ 1} Defendant-appellant Wendell Beckett appeals from his conviction for escape, a violation of R.C. 2921.34(A)(1), a third degree felony, that was entered in the Harrison County Common Pleas Court. Four issues are raised in this appeal. The first issue is whether the amendment to the indictment changed the identity or name of the charge. The second issue is whether Beckett's speedy trial rights were violated. The third issue is whether Beckett was denied counsel. The final issue is whether the jury should have been instructed on the crime of aiding escape, a violation of R.C. 291.35. For the reasons stated below, the judgment of the trial court is hereby affirmed.
 STATEMENT OF FACTS {¶ 2} On January 19, 2005, Beckett was in the custody of the state and was being held in Harrison County. He was being held for case number 04-512-CR, an alleged violation of community based controls that were imposed on a fourth degree felony; a notice hearing concerning the alleged violations was scheduled for that date.
 {¶ 3} While in the custody of the state, a deputy took Beckett and two other prisoners out on the back porch to smoke. Beckett was handcuffed to a hitching post. Jeremy Cheeseman, one of the other prisoners, was handcuffed to Beckett. The last prisoner was secured separately by being handcuffed to another railing on the back porch. That prisoner finished his cigarette and the deputy took him back inside. While this was being done, Beckett slipped his hand out of the handcuff that was attached to the post. Beckett and Cheeseman jumped off the porch and left the premises. Neither had permission to do so. Beckett and Cheeseman were captured approximately 30 minutes later.
 {¶ 4} As a result of those actions, Beckett was charged with escape. Beckett was brought to trial January 31, 2006. A jury found him guilty. He was sentenced to three years in prison. Beckett timely appeals raising four assignments of error.
 FIRST ASSIGNMENT OF ERROR {¶ 5} "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY AMENDING THE INDICTMENT IN VIOLATION OF CRIMINAL RULE 7 WITHOUT NOTIFICATION TO APPELLANT." *Page 3 
 {¶ 6} Beckett was indicted on January 25, 2005. The indictment read as follows:
 {¶ 7} "THE JURORS OF THE GRAND JURY of the State of Ohio, within and for the body of the County aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present thatWENDELL E. BECKETT, c/o Harrison County Sheriff's Office, Cadiz,Ohio, * * *, did commit the crime ESCAPE, in that on or about January 19, 2005, at Harrison County, Ohio, he did, knowing he is under detention purposely break the detention, a felony of the third degree,contrary to and in violation of Section 2921.31(A)(1) of the OhioRevised Code, and against the peace and dignity of the State of Ohio."
 {¶ 8} On September 8, 2005, upon the state's motion, the indictment was amended to change the Revised Code section from R.C. 2921.31(A)(1) to R.C. 2921.34(A)(1). Beckett argues that the trial court erred in amending the indictment because it changed the identity of the indictment and there was no notice to him of the change.
 {¶ 9} Crim.R. 7(D) controls amendments to indictments. It provides that a court may amend the indictment. However, the amendments are limited to those that do not "change * * * the name or identity of the crime charged." State v. Powers (Jan. 30, 2001), 10th Dist. No. 00AP-815, quoting Crim.R. 7(D).
 {¶ 10} The original indictment listed the crime as escape and the Revised Code referenced was R.C. 2921.31(A)(1). However, that statute listed is titled obstructing official business. It is not the escape statute. None of the language from the obstructing official business statute is present in the indictment. Furthermore, the obstructing official business statute does not have a section labeled (A)(1).
 {¶ 11} The amended indictment substituted R.C. 2921.34(A)(1) for R.C.2921.31(A)(1). R.C. 2921.34 is the escape statute. Furthermore, this statute contains a subsection (A)(1). The language of the indictment, original and amended, mimics that subsection of R.C. 2921.34 in that they both state that Beckett did "purposely break the detention."
 {¶ 12} Consequently, since escape was listed in the original indictment and the language used in that indictment referenced escape by name and by the elements *Page 4 
needed to commit the offense, the amendment of the statutory section was not a change to the identity of the crime charged. Rather, the amendment was merely correcting a typographical error that listed escape as R.C.2921.31 instead of R.C. 2921.34.
 {¶ 13} Moreover, regardless of whether or not it changed the name or identity of the crime charged, the trial court did not error in allowing the amendment. The record in this case clearly shows that Beckettconsented to the amendment and, as such, he cannot now complain of the alleged error.
 {¶ 14} A hearing concerning the motion to amend was held on September 8, 2005. The state made its arguments for amending the indictment at that hearing. Beckett chose to represent himself at that time. The record contains a dialog concerning his choice to represent himself and also contains a written instrument denoting such decision.
 {¶ 15} After the state gave its arguments for the amendment, the trial court and Beckett had the following colloquy:
 {¶ 16} "THE COURT: Alright, thank you Mr. Hervey [prosecuting attorney]. Any objections, Mr. Beckett?
 {¶ 17} "MR. BECKETT: No, Your Honor.
 {¶ 18} "THE COURT: Alright and that is indictment [sic] is hereby amended by interlineations and the Court has struck out the portion of the indictment that refers to Ohio Revised Code Section 2921.31(A)(1) and has replaced that with 2921.34(A)1) to correct that. * * *." (09/08/05 Tr. 2).
 {¶ 19} It has been held that an indictment may be "amended to change the name or the identity of the offense charged when the defendant implicitly consents to the amendment." Powers, 10th Dist. No. 00AP-815, citing State v. Mangen (Oct. 15, 1991), 2d Dist. No. 1282. Thus, if a defendant consents to the amendment there is no Crim.R. 7(D) violation.
 {¶ 20} In the case at hand, Beckett explicitly consented to the amendment in open court. Thus, regardless of whether the indictment changed the name or identity of the crime charged, Beckett cannot now complain of a Crim.R. 7(D) violation *Page 5 
because he consented to the change. Consequently this assignment of error has no merit.
 SECOND ASSIGNMENT OF ERROR {¶ 21} "APPELLANT'S CONSTITUTIONAL RIGHTS PURSUANT TO SECTIONS 10 AND16, ARTICLE I OF THE OHIO CONSTITUTION AND THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE TRIAL COURT DENIED APPELLANT'S MOTION TO DISMISS BASED UPON SPEEDY TRIAL VIOLATIONS."
 {¶ 22} Beckett argues that he was not brought to trial within the time limits prescribed by R.C. 2941.401. He contends that the speedy trial limit of 180 days, as is prescribed in R.C. 2941.401, applies to him because he was serving a sentence in prison in case number 04-512-CR while awaiting to be brought to trial on the escape charge.
 {¶ 23} Ohio has two speedy trial statutes, R.C. 2945.71 et seq. and R.C. 2941.401. R.C. 2945.71 et seq. is the general speedy trial statute that governs most cases. However, the speedy trial rights in R.C.2945.71 et seq. do not apply when a defendant is serving a prison sentence, rather, R.C. 2941.401 applies. State v. Kuhn (June 10, 1998), 4th Dist. No. 97CA2307, citing State v. Logan (1991),71 Ohio App.3d 292, 296. As the Eighth Appellate District has explained:
 {¶ 24} "R.C. 2941.401 is a specific statute which prevails over the general speedy trial statutes, i.e., R.C. 2945.71 et seq. See R.C.2945.71(F). If a defendant is incarcerated, R.C. 2941.401 governs the time within which the state must bring him or her to trial." State v.Fox (Oct. 22, 1992), 8th Dist. No. 63100.
 {¶ 25} This statute even applies if while awaiting trial on new charges, a criminal defendant enters a term of imprisonment for a previous conviction. Kuhn, 4th Dist. No. 97CA2307, citing State v.Hill (May 2, 1990), 7th Dist. No. 88CA30. Upon entering a term of incarceration, the general speedy trial statutes cease to govern the time within which the state must try the defendant on the new charge.Kuhn, 4th Dist. No. 97CA2307, citing Hill, 7th Dist. No. 88CA30.
 {¶ 26} As explained in the facts, Beckett committed the escape charge while he was being held on alleged community control violations. Beckett was arrested the *Page 6 
same day he escaped. He was arraigned on the escape charge on February 1, 2005. The evidentiary hearing for case number 04-512-CR for alleged violations of community based control violations was held on March 8, 2005. The trial court found that he violated his community based control violations. Thus, in case number 04-512-CR, Beckett was sentenced to the remainder of the sentence which was 14 months, less credit for time previously served, 124 days. (03/08/05 Tr. 90). Beckett finished serving his sentence in case number 04-512-CR on January 4, 2006. He was then held in jail on a $50,000 bond for the escape charge. Trial for the escape charge began on January 31, 2006.
 {¶ 27} As these facts show, from the time of arrest on the escape charge until the imposition of the sentence on the community control sanctions, Beckett was not serving a term of incarceration. Thus, R.C.2945.71 et seq. would apply to that time.
 {¶ 28} The escape charge is a third degree felony. A person charged with a felony shall be brought to trial within 270 days of the date of arrest. R.C. 2945.71(C)(2). If that person is held in jail in lieu of bail, then each day of custody is to be counted as three days. This "triple-count" provision applies only when the defendant is being held in jail solely on the pending charge. State v. MacDonald (1976),48 Ohio St.2d 66, paragraph one of the syllabus. Therefore, the triple-count provision does not apply when a defendant is being held in custody pursuant to other charges. Id.
 {¶ 29} Beckett was not being held solely on the escape charge; he was also being held for alleged community control violations. Thus, the triple count provision was not applicable. Consequently, from the time of arrest, January 19, 2005, until sentencing on case number 04-512-CR on March 8, 2005, 48 days had elapsed. Beckett filed no motions which tolled speedy trial time during those 48 days.
 {¶ 30} On March 8, 2005, Beckett's sentence was imposed on his previous conviction. As explained above, once the sentence from Beckett's previous conviction was reimposed, R.C. 2945.71 et seq. ceased to govern the time he had to be brought to trial on the escape charge. Rather, R.C. 2941.401 governed the time limit.
 {¶ 31} R.C. 2941.401 reads as follows: *Page 7 
 {¶ 32} "When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.
 {¶ 33} "The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof."
 {¶ 34} It has been determined that the 180 day period set forth in the above statute does not begin to run until the defendant files notice of his request for disposition of the untried indictment. SeeLogan, 71 Ohio App.3d at 296; State v. Turner (1982), 4 Ohio App.3d 305. Beckett did not request disposition of the untried indictment. The first time speedy trial is mentioned is on the day of trial, January 31, 2006.
 {¶ 35} Admittedly, the second paragraph of the portion of R.C.2941.401 that is cited above, indicates that the warden having custody of Beckett was to inform him of the untried indictment and of his right to request final disposition of the indictment. In this case, there is no indication in the record that the warden informed Beckett of the escape charge. However, given the facts in this case, that deficiency did not excuse Beckett's duty to trigger the running of his speedy trial rights under R.C. 2941.401.
 {¶ 36} The Fourth Appellate District has explained, *Page 8 
 {¶ 37} "Where the warden fails to inform the prisoner, the state cannot rely upon the defendant's failure to make a demand for speedy disposition, but must start the one hundred eighty day time period from the day of the indictment. * * * However, where the defendant is fully aware of the charges pending against him, the fact that he was not notified by the warden does not excuse his duty to trigger the running of his speedy trial rights under R.C. 2941.401." State v. Brown, (1998),131 Ohio App.3d 387, 393, quoting State v. Davis (June 4, 1997), 4th Dist. No. 96CA2181. See, also, State v. Siniar, 6th Dist. No. H-03-008,2004-Ohio-1043, ¶ 11, citing State v. Cox, 4th Dist. No. 01CA10, 2002-Ohio-2382; State v. Robinson, 10th Dist. No. 01AP-1005, 2002-Ohio-2090; State v. Hill (Dec. 30, 1996), 4th Dist. No. 96CA4.
 {¶ 38} In the instant case, Beckett was clearly aware of the indictment against him. The record indicates that Beckett was arraigned on February 1, 2005 and that he received the indictment 24 hours prior to the arraignment. Furthermore, at the evidentiary hearing for the community control violations held on March 8, 2005, it is clear that Beckett was aware of the escape charge pending against him.
 {¶ 39} As the record is devoid of any indication that Beckett invoked his right to speedy trial pursuant to R.C. 2941.401, the speedy trial time did not begin to run. State v. Robinson, 10th Dist. No. 01AP-1005, 2002-Ohio-2090. Thus, the state was not required to try Beckett within the 180 days enumerated in R.C. 2941.401.
 {¶ 40} The state indicates that Beckett finished serving his sentence in 04-512-CR on January 4, 2006. Beckett, however, did not go to trial on the escape charge until January 31, 2006. In 2005, the Fourth Appellate District faced with a situation similar to this, held that once a defendant finishes a term of incarceration, but still has an untried indictment, the statutory provision in R.C. 2945.71 et seq. once again applies. State v. Beverly, 4th Dist. No. 04CA2809, 2005-Ohio-4954.
 {¶ 41} In Beverly, the defendant was indicted for a fifth degree felony, possession of cocaine. At the time he was served with the indictment, he was being held in prison in Chillicothe, Ohio. He was then arraigned and pretrial conferences were scheduled and held. Prior to trial being held, defendant was released from the prison in Chillicothe, having completed his sentence. Upon release, however, defendant was transported to and held in the county jail in lieu of the bond established *Page 9 
at his arraignment, in connection with the possession of cocaine charge. He was being held solely on the possession of cocaine charge.
 {¶ 42} Due to the facts of that case, the appellate court applied R.C.2945.71 et seq. and not R.C. 2941.401. It explained:
 {¶ 43} "[W]e agree with Appellee that R.C. 2941.401 was applicable at the time Appellant was indicted for the new charge. However, the problem with the scenario sub judice is that Appellant, during the pendency of the proceedings, ceased to be incarcerated and instead was released from prison and was held in a county jail solely on the pending charges. Therefore, his status changed. We believe that such a material status change necessitates the application of the general speedy trial statute, R.C. 2945.71, rather than the specific speedy trial statute, R.C.2941.401, which is only applicable to incarcerated individuals."
 {¶ 44} The Fourth Appellate District's reason for doing so was because the language of R.C. 2941.401 states, "[w]hen a person has entered upon a term of imprisonment in a correctional institution of this state,and when during the continuance of the term of imprisonment there is pending in this state any untried indictment * * *." (Emphasis added). The court viewed the statute's use of the phrase "during the continuance of the term of imprisonment" to mean that the statute only applies during the continuance of the term of imprisonment, and not beyond.
 {¶ 45} We find the court's opinion in Beverly to be logical and persuasive. Accordingly, we shall apply its holding to the facts presently before us. Here, Beckett's speedy trial time would begin to run upon finishing his incarceration. After finishing his prison term, Beckett was being held in jail awaiting trial. 01/04/06 J.E. Bond was sent at $50,000. 01/04/06 J.E. Beckett was unable to post bond, thus at that point he was being held in jail in lieu of bond. Consequently, the triple count provision in R.C. 2945.71(E) applies from January 4, 2006 through the date of trial on January 31, 2006.
 {¶ 46} From January 4, 2006 to January 31, 2006, 27 days elapsed. However, some of that time is attributable to Beckett. On November 16, 2005, Beckett orally moved to vacate the judgment against him on the community based control violations — case number 04-512-CR. That motion was not ruled upon until January 18, 2006. *Page 10 
That oral motion acted as a tolling agent. Beckett admitted this when he made the oral motion in November.
 {¶ 47} Thus, considering that time did not begin to run until January 18, 2006. From that day until the date of trial on January 31, 2006, 14 days had elapsed. Applying the triple count provision, that would amount to 42 days. As stated above, the state was required to bring Beckett to trial within 270 days. Clearly, Beckett was brought to trial within that time. Furthermore, even if we add the 48 days that had elapsed from the date of arrest in January 2005 until the sentence on case number 04-512-CR, only 90 days had elapsed. He was still clearly tried within the time limits.
 {¶ 48} In conclusion, considering all the above, we cannot find a speedy trial violation. While Beckett was incarcerated he did not invoke his speedy trial rights under R.C. 2941.401. Furthermore, following his release, his speedy trial rights under R.C. 2945.71 et seq. were not violated. Accordingly, this assignment of error has no merit.
 THIRD ASSIGNMENT OF ERROR {¶ 49} "APPELLANTS CONSTITUTIONAL RIGHTS WERE VIOLATED AS HE WAS DENIED HIS RIGHT TO THE ASSISTANCE OF COUNSEL AS GUARANTEED BY THEFIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 50} Beckett claims that there was a clear breakdown in his attorney-client relationship with Attorney Nigolian. On the day of trial, Beckett requested to have new counsel appointed. The trial court denied the request. Thus, Beckett decided to represent himself. Attorney Nigolian stayed on as advisory counsel in case Beckett had any questions. Beckett argues the trial court's actions resulted in him being denied counsel.
 {¶ 51} "An indigent defendant is not entitled to the counsel of his choosing, but rather, only the right to competent, effective representation. See State v. Murphy (2001), 91 Ohio St.3d 516, 523;State v. Cowans (1999), 87 Ohio St.3d 68, 72; Thurston v. Maxwell
(1965), 3 Ohio St.2d 92, 93. The right to counsel does not guarantee the defendant a meaningful relationship with counsel. See Morris v.Slappy *Page 11 
(1983), 461 U.S. 1, 13-14; State v. Pruitt (1984), 18 Ohio App.3d 50,57. In order for a criminal defendant to discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to the effective assistance of counsel. See State v. Coleman (1988),37 Ohio St.3d 286, paragraph four of the syllabus.
 {¶ 52} "Thus, an indigent defendant is entitled to new counsel `only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result.' State v. Edsall (1996),113 Ohio App.3d 337, 339; see, also, State v. Blankenship (1995), 102 Ohio App.3d 534,558; Pruitt, 18 Ohio App.3d at 57. Hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See State v. Henness (1997),79 Ohio St.3d 53, 65-66. Furthermore, `[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel.' State v. Glasure (1999), 132 Ohio App.3d 227, 239." State v.Newland, 4th Dist. No. 02CA2666, 2003-Ohio-3230, ¶ 10-11.
 {¶ 53} Despite Beckett's insistence, the record in this case does not show a breakdown of the attorney client relationship, much less a breakdown of such magnitude as to jeopardize his right to effective assistance of counsel. The court noted in its journal entry denying Beckett's request for new counsel the following:
 {¶ 54} "The Court informed Defendant that Mr. Nigolian had engaged in discovery to prepare for trial, had attempted to vacate earlier proceedings against Defendant, and had actively represented him in a pretrial conference conducted by the Court. Defendant disputed the `validity' of the pretrial conference as Defendant's complaint `against' Attorney Nigolian as a motion for new counsel. The Court found that Attorney Nigolian was an experienced and well-qualified attorney who was complying with professional standards in representing Defendant. The Court overruled Defendant's motion for new counsel." 02/02/06 J.E.
 {¶ 55} In order to show that Attorney Nigolian was ineffective and that there was a breakdown of the relationship, Beckett points this court to the fact that Attorney *Page 12 
Nigolian did not move to dismiss the charges based upon speedy trial violations. However, as explained above, there were no speedy trial violations. As such, Attorney Nigolian was under no obligation to move for dismissal based on that reason. Thus, this does not show he was ineffective, much less that there was a breakdown in the relationship.
 {¶ 56} Furthermore, the record in this case does not show that the trial court erred in denying his request for new counsel, i.e. that Beckett was entitled to new counsel. The request was made on the day of trial and the case at that point had been pending for over a year. Moreover, Beckett seemed to have a difference of opinion with all his counsel. He began this case with Attorney Pincola. Beckett moved to represent himself in open court on August 21, 2005. The trial court allowed him to do so after advising him of his rights. That transcript reflects that Beckett did not like the offer the state made, which was the minimum sentence of a year and that it would run consecutive to any sentence he was currently serving. The state was not recommending any additional sanctions. Beckett did not like the offer because he did not want the sentence to run consecutive to any other sentence. However, as the state and Attorney Pincola indicated on the record by law, the escape sentence was required to run consecutive to any other term he was currently serving.
 {¶ 57} The transcript clearly indicates that Attorney Pincola was adequate in his representation and advice to Beckett. Even prior to that hearing, the trial court remarked on the good job Attorney Pincola did. (03/08/06 Tr. 90).
 {¶ 58} "Mr. Beckett the Court finds that, first of all, Mr. Pincola has admirably tried to defend this action and has tried to work a resolution in the best interest of Mr. Beckett, but Mr. Beckett is not interest [sic] and does not preserve [sic] the facts the same way." (03/08/06 Tr. 90).
 {¶ 59} Furthermore, the record shows that Beckett had other counsel. The record shows that Beckett chose to represent himself and fire the attorney working for him in the Tuscarawas County Common Pleas Court. 10/23/05 J.E. from Tuscarawas County Common Pleas Court. While that attorney did not represent Beckett in this case, the fact that Beckett also fired him tends to show Beckett's disposition. *Page 13 
 {¶ 60} In conclusion, the court did not deny Beckett counsel. The record does not show that there was a complete breakdown in the attorney-client relationship between Beckett and Attorney Nigolian. Furthermore, given that Beckett requested that Attorney Nigolian be removed as counsel and new counsel be appointed on the day of trial after the case had been pending for over a year supports the trial court's decision. Likewise, so does the number of attorneys that Beckett had gone through and the fact that the record shows that both Attorneys Nigolian and Pincola were effectively representing Beckett. Thus, this assignment of error has no merit.
 FOURTH ASSIGNMENT OF ERROR {¶ 61} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY REFUSING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF `AIDING ESCAPE OR RESISTANCE TO AUTHORITY IN VIOLATION OF OHIO REVISED CODE SECTION 2921.35."
 {¶ 62} Under this assignment of error, Beckett argues plain error occurred when the trial court failed to instruct the jury on the crime of aiding escape, a violation of R.C. 2921.35. He claims it is a lesser included offense of escape, R.C. 2921.34(A)(1), and as such, given the evidence, he was entitled to a jury instruction on it.
 {¶ 63} At the end of trial prior to the jury instructions, the following colloquy occurred:
 {¶ 64} "MR. BECKETT: Well do to the nature of the crime, I would wish for an amendment to the charge from a F3 to a lesser degree offense being that no one broke out of no facilities. I've already went over you with the time frame of having me prosecuted by.
 {¶ 65} "THE COURT: All right, we're on to trial issues now. Do you know of a specific lesser-included offense that you believe is . . .
 {¶ 66} "MR. BECKETT: F5 felony escape.
 {¶ 67} "THE COURT: Well, I don't . . .
 {¶ 68} "MR. BECKETT: Do you the . . .
 {¶ 69} "THE COURT: Alright . . .
 {¶ 70} "MR. BECKETT: There's no evidence that proves that I did it, other than the testimony. *Page 14 
 {¶ 71} "THE COURT: All right, the only, go ahead Mr. Hervey, you may respond.
 {¶ 72} "ATTORNEY HERVEY: Your Honor, in response, the State believes, we would treat this as one: a rule 29 motion and two: a motion to amend the indictment based on the State's case in chief. The State believes it has provided substantial, reliable evidence as to each and every element of the offense. Specifically, the defendant has stipulated that he was under detention for a probation violation out of a Felony 4 offense being theft of a firearm. Furthermore, Your Honor, it is clear from the testimony presented to court that he was in the custody of the Harrison County Sheriff from the time he was picked up from Washington County, through his court appearance, and into the time where he was placed outside to the hitching post to smoke. It's also clear from the testimony that at no time did anyone from the Sheriff's office allow him, or grant him the permission to leave that detention. Your Honor, I would site the case law in this case that states an escape charge is appropriate for defendant's who are released in order to come back on a date specific. That in and of itself can be an escape. Therefore the defendant's argument that because he was not placed in a jail facility or in an individual cell would not stand legal screening." (01/31/06 Tr. 134-136).
 {¶ 73} The above does not clearly establish that Beckett was requesting an instruction on aiding escape, R.C. 2921.35. This is especially the case since aiding escape is a fourth degree felony, not a fifth degree felony. R.C. 2921.35. Thus, we review this assignment of error under a plain error standard of review. See State v. Goodwin,84 Ohio St.3d 331, 347, 1999-Ohio-356. See, also, State v. Nipper, 12th Dist. No. CA2002-06-135, 2003-Ohio-4449, ¶ 25. Plain error does not exist unless, but for the error, the outcome of the trial would have been different. State v. Waddell, 75 Ohio St.3d 163, 166, 1996-Ohio-100. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 74} The arguments made above raise two questions for this court's consideration. The first is whether aiding escape, R.C. 2921.35 is a lesser included *Page 15 
offense of escape, R.C. 2021.34(A)(1)? The second is if it is a lesser included offense, would the outcome of the trial clearly have differed had the instruction been given?
 {¶ 75} Regarding, whether aiding escape is the lesser included offense of escape, we look to the test that determines whether one offense is a lesser included offense of another. The test for a lesser included offense is as follows:
 {¶ 76} "[A] criminal offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Barnes (2002),94 Ohio St.3d 21, 25-26, citing State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
 {¶ 77} Aiding escape, R.C. 2921.35, is a fourth degree felony. R.C.2921.35 (C). Escape, R.C. 2921.34(A)(1), is a third degree felony. Thus, the first prong is met.
 {¶ 78} Next, we look to the second prong: whether escape can as statutorily defined, ever be committed without aiding escape, as statutorily defined also being committed. If it can, then the second prong is not met.
 {¶ 79} R.C. 2921.34(A)(1) defines escape as, "no person, knowing the person is under detention * * *, shall purposely break * * * the detention, * * * either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."
 {¶ 80} Aiding escape is defined as:
 {¶ 81} "(A) No person, with purpose to promote or facilitate an escape or resistance to lawful authority, shall convey into a detention facility, or provide anyone confined therein with any instrument or thing which may be used for such purposes.
 {¶ 82} "(B) No person who is confined in a detention facility, and with purpose to promote or facilitate an escape or resistance to lawful authority, shall make, procure, conceal, unlawfully possess, or give to another inmate, any instrument or thing which may be used for such purposes." R.C. 2921.35. *Page 16 
 {¶ 83} As statutorily defined, it appears that escape could be committed without the crime of aiding escape being committed. For instance, an inmate could escape by breaking detention without providing an instrument or concealing an instrument. Thus, escape can occur without aiding escape occurring. Thus, the second prong would not be met. Consequently, the trial court did not commit plain error by failing to instruct on aiding escape because aiding escape is not a lesser included offense of escape.
 {¶ 84} However, even if it was determined that it was a lesser included offense, the trial court did not commit plain error by failing to instruct on aiding escape because Beckett cannot show that the outcome of the trial would have been different had the instruction been given. The uncontroverted facts in this case are that Beckett was in custody at the time of the escape. He was handcuffed to a hitching post so that he could smoke. Cheeseman was handcuffed to Beckett so that he could also smoke. Beckett slipped his hand out of the handcuff attached to the hitching post and him and Cheeseman took off. Cheeseman testified that it was Beckett who slipped the cuff off. (01/31/06 Tr. 126).
 {¶ 85} As stated above, escape requires a person, knowing they are in detention, to purposely break the detention. The above evidence overwhelmingly establishes those elements. It cannot be concluded that the outcome of the trial would have been different had an aiding escape instruction been given. This assignment of error has no merit.
 {¶ 86} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 Donofrio, J., concurs. Waite, J., concurs. *Page 1